OPINION OF THE COURT

Per Curiam.

On October 2, 1978, the Office of Court Administration announced the scheduling of public hearings concerning a proposed classification plan and proposed title standards for *427 nonjudicial employees of the unified court system.[1] The announcement also advised that the hearings would consider an attached "Proposed administrative policy of the Chief Judge concerning the establishment of a classification plan and an appeals procedure”. The attachment indicated that the policy had been approved by the Court of Appeals after consultation by the Chief Judge with the Administrative Board of the courts,[2] and that the court had sanctioned conducting the hearings on both subjects simultaneously.
Soon after the announcement and before the first hearing was scheduled, the petitioners, as court employees and presidents of associations of employees of the unified court system, commenced this article 78 proceeding to enjoin the Chief Administrator of the courts from holding any hearings on either the proposed administrative policy or title standards, from exercising any delegated powers or duties with regard to these proposals and, finally, from establishing or implementing any revised classification plan or title standards. In essence, the petitioners contend that (1) only the Chief Judge, in consultation with the Administrative Board, and with the approval of the Court of Appeals, may promulgate classification plans and title standards and that the delegation to the Chief Administrator of unilateral authority to do so and to hold hearings thereon is violative of section 28 of article VI of the State Constitution and section 211 of the Judiciary Law; that (2) the proposed policy, which would permit such delegation, is therefore also unconstitutional and unlawful; and that (3), in any event, until the proposed policy has actually been adopted, it is improper to hold hearings on the classification plan and title standards purportedly promulgated pursuant thereto.
Special Term, holding that the adoption of a classification plan was a nondelegable responsibility of the Chief Judge, entered a judgment enjoining the Chief Administrator from holding hearings or adopting the proposed plans. Upon appeal, however, the Appellate Division unanimously concluded that the formulation of a personnel classification plan and the holding of hearings in that connection were properly delega *428 ble. But, noting that implementation of the proposed plan or any revision thereof was still some time off, it withheld as premature any determination of whether responsibility for actual adoption was also delegable. On these bases, it reversed the judgment, dismissed the petition and permitted the hearings to proceed.[3]
For the reasons which follow, we believe the dismissal must be upheld. The Chief Administrator has the power to establish a classification plan when directly delegated that authority by the Chief Judge, and he may conduct public hearings in furtherance of that purpose.
The constitutional roots of the power exercised by those charged with the administration of the State court system are to be found in section 28 of article VI of the New York Constitution, which reads:
"§ 28. a. The chief judge of the court of appeals shall be the chief judge of the state of New York and shall be the chief judicial officer of the unified court system. There shall be an administrative board of the courts which shall consist of the chief judge of the court of appeals as chairman and the presiding justice of the appellate division of the supreme court of each judicial department. The chief judge shall, with the advice and consent of the administrative board of the courts, appoint a chief administrator of the courts who shall serve at his pleasure.
"b. The chief administrator, on behalf of the chief judge, shall supervise the administration and operation of the unified court system. In the exercise of such responsibility, the chief administrator of the courts shall have such powers and duties as may be delegated to him by the chief judge and such additional powers and duties as may be provided by law.
"c. The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application throughout the state, which shall be submitted by the chief judge to the court of appeals, together with the recommendations, if any, of the administrative board. Such standards and administrative policies shall be promulgated after approval by the court of appeals.”
Striking is the unqualified constitutional statement that *429 "the chief administrator * * * shall supervise the administration and operation of the unified court system.” True, this broad power is hemmed in by the fact that the administrator serves at the will and on behalf of the Chief Judge, but the breadth of the Chief Judge’s power as the fount of the delegation makes it a strength as well. For, with respect to supervision or management, as distinguished from policy formulation, the Constitution places no limitations on the duties the Chief Judge may delegate to the administrator. And, neither consultation with the Administrative Board nor approval by the Court of Appeals is a prerequisite to the exercise of supervisory powers by the Chief Administrator — a marked contrast with the restrictions placed on the establishment of "standards and administrative policies for general application throughout the state” (emphasis ours). Moreover, far from restricting the Chief Administrator in any way, subdivision b’s grant to him of "such additional powers and duties as may be provided by law” is merely a further source from which to add to the broad administrative authority of that office. In short, the Chief Judge’s administrative powers are complete, and the Chief Administrator may employ them fully when and while and to the extent that they have been delegated to him.
Of course, what is "administrative” is not always easy to determine. Generally, the term is an elastic one, dependent on the context in which the power came into existence and is expected to be exercised. In this case, a strong clue to the intent of the constitutional amendment’s legislative draftsmen is provided by section 211 of the Judiciary Law, which they also authored and which describes examples of what they considered to be the Chief Judge’s administrative powers.[4] Pointedly, among the day-to-day operational functions which section 211 lists as administrative activities for which policy standards are to be established are "Personnel practices affecting nonjudicial personnel including: title structure, job definition, classification [etc.]” (Judiciary Law, § 211, subd 1, par [d]). The clear inference to be drawn from the statutory structure is that the Legislature considered the adoption of classification plans an administrative task, which, perforce, would be delegable by the Chief Judge. Indeed, to say the least, it would have been highly inconvenient, if not impractical, to implement any other concept of power distribution, *430 given the Chief Judge’s judicial obligations as a member of the Court of Appeals and his consequent probable need to rely on the Chief Administrator to deal with the mass of detail inherent in creating a personnel plan for such a large, diverse and complex organization as the unified court system with its approximately 9,500 nonjudicial employees. It follows that the constitutional grant of power to "supervise the administration and operation of the unified court system” (NY Const, art VI, § 28, subd b) is not to be read in the hyperrestrictive manner which petitioners advocate. Consistent with this scheme is the broad statutory provision allowing the Chief Administrator to "Hold hearings and conduct investigations” (Judiciary Law, § 212, subd 1, par [h]).
However, an important restriction on these powers does exist. Subdivision c of section 28 of article VI of the new constitutional provision mandates that before the Chief Judge may establish "standards and administrative policies” he must consult with the Administrative Board and obtain the approval of the Court of Appeals. Section 211 of the Judiciary Law retraces these built-in checks and balances and, as already indicated, requires that such standards and policies be formulated for personnel practices. Furthermore, section 211 (subd 1, par [d]) expressly provides that "[sjtatewide standards and policies concerning personnel practices relating to nonjudicial personnel * * * shall be promulgated after a public hearing”.
The hearings held here were in compliance with that provision. There is no circumscription of the power of the Chief Administrator, either in subdivision c of section 28 of article VI or in the statutes, that interdicts the administrator from conducting them. The standards and policies to be considered at the hearing had successfully run the gamut of submission by the Chief Judge, consultation with the Administrative Board and approval by the Court of Appeals. Nor does subdivision c, in speaking of promulgation of standards and policies only after approval of the Court of Appeals, either in letter or spirit restrict the Chief Judge from empowering the Chief Administrator to carry out the formal act of promulgation.
Even if so, the petitioners, relying in considerable part on the relative brevity of the written formulation of the proposed administrative policy, assert that the proposed declaration is inadequate to meet the guideline requirements contemplated by subdivision c of section 28 of article VI. But the long and *431 short of it is hardly the measure. Policy statements, like Constitutions, expectedly may be variable in size and scope (compare United States Constitution with New York State Constitution). Thus, though policy statements may be detailed, they often are brief but broad statements of principle, identifying goals to be achieved while leaving to administrative implementation the methodology by which those goals are in fact to be reached.
To boot, in the present case the proposed policy statement is not as scanty as the petitioners suggest. It would require the Chief Administrator to classify all employees in accordance with their "duties”, "responsibilities” and "volume of work”. Further, all positions would be allocated to salary grades. Moreover, the implementation of the classification plan would not take place until public hearings provided employees or their representatives an opportunity to comment. Also, consultations with the Administrative Board would be required both preceding and following the public hearings. And if, withal, an employee should regard himself or herself as unjustly treated, he or she would not be left without an adequate remedy. For an employee aggrieved by the classification either as to position or salary grade — or an employee organization whose members are so aggrieved — would have the right of appeal to a three-member classification review board. In order to assure objectivity, board members would be appointed independently by government agencies outside the court system, and their decisions would be subject to review in a proceeding brought by either side pursuant to CPLR article 78.
Finally, we find no cause for complaint in the fact that the hearings, both the one required on the proposed declaration of policy and the one volunteered on the classification plan and title standards, were to be held jointly. While the latter could not be adopted until after the former, it is implicit that the actual adoption of the plan or any revision of it would not take place until the guidelines established by the policy or any revised version of it had first been adopted. Obviously, as evidenced by the proposed policy’s provision for a public hearing on the plan, here the one was prepared and proposed in contemplation of the other. So long as the plan is promulgated subsequent to and consistent with a prior establishment of policy (and there is no reason to believe this two-step order of things will not be followed), the dual presentation at the public hearing is to be viewed as nothing more than a permis *432 sibly expedient way of preventing unnecessary delay in the implementation of a classification system during a time of transition from the former system of court administration to the present one.
Accordingly, the order should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur in Per Curiam opinion; Chief Judge Cooke taking no part.
Order affirmed.
APPENDIX
Judiciary Law
§ 211. Administrative functions of the chief judge of the court of appeals
1. The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application to the unified court system throughout the state, including but not limited to standards and administrative policies relating to:
(a) The dispatch of judicial business, the designation of administrative judges, hours of court, assignment of terms and judges, transfer of judges and causes among the courts of the unified court system, the assignment and reassignment of administrative functions performed by judicial and nonjudicial personnel, the need for additional judicial or nonjudicial personnel, and the publication of judicial opinions.
(b) The adoption, amendment, rescission and implementation of rules and orders regulating practice and procedure in the courts, subject to the reserved power of the legislature provided for in section thirty of article six of the constitution.
(c) The form and preparation of the itemized estimates of the annual financial needs of the unified court system.
(d) Personnel practices affecting nonjudicial personnel including: title structure, job definition, classification, qualifications, appointments, promotions, transfers, leaves of absence, resignations and reinstatements, performance ratings, removal, sick leaves, vacations and time allowances. Statewide standards and policies concerning personnel practices relating to nonjudicial personnel shall be consistent with the civil service law, and shall be promulgated after a public hearing at which affected nonjudicial employees or their representatives shall have the opportunity to submit criticisms, objections and suggestions relating to the proposed standards and policies.
(e) Administrative methods and systems of the unified court system.
(f) The form, content, maintenance and disposition of court records.
(g) Fiscal, accounting and auditing practices, the collection of fines and fees, and the custody and disposition of court funds.
(h) The purchase, distribution and allocation of equipment and supplies.
(i) The maintenance and management of law libraries, provision of rooms and accommodations for the courts of the unified court system, the judges, justices and the clerical and administrative personnel thereof.
*433 (j) The examination of the operation of the courts and the state of their dockets and the investigation of criticisms and recommendations.
2. The chief judge shall submit such standards and administrative policies to the court of appeals, together with the recommendations, if any, of the administrative board. Such standards and administrative policies shall be promulgated by the chief judge after approval by the court of appeals.
3. Whenever there is a vacancy in the office of chief judge or if the chief judge shall be unable to exercise the duties, functions or powers of his office, during the period of such vacancy or inability the court of appeals shall designate an associate judge of that court to act in his stead.

. On October 4, 1978, a detailed 269-page "proposed classification plan” and an even longer "proposed title standards (draft)” were released for distribution.

. The Administrative Board of the courts, whose powers under the Constitution are now largely consultative, consists of the Chief Judge of the Court of Appeals and the Presiding Justices of each of the four Appellate Divisions.

. The hearings have now been completed, but a stay of the establishment of a classification plan, which we granted pending the hearing and determination of this expedited appeal, remains in effect.

. Section 211 of the Judiciary Law is annexed as an Appendix.