Fuchsberg, J.
(concurring in result). It seems to me important that we recognize that, in this affair, under our State Constitution this court necessarily operates on two levels, judicial and administrative. These cannot always be discrete. For instance, our managerial function includes, pertinently, the approval or disapproval of standards and administrative policies promulgated for the governance of our unified court system; at the same time, we now pass judgment in an important controversy relating to the exercise or nonexercise of our power.
This in mind, I agree that the 31 Civil and Criminal Court Judges now temporarily assigned to the Supreme Court should conclude their present tours of duty as of July 1,1982. And I further agree that, in the interim, standards and administrative policies to regulate the selection and service of their successors, be these the same individuals or others, should be devised and established anew by the Chief Judge after consultation with the Administrative Board and subject to approval of this court.
But, though I join in these dispositions, the path by which they are reached does not coincide, in part, with that taken by the Per Curiam opinion. For one thing, I would hold that the Chief Judge and the Chief Administrator, in *38 making the assignments in question, have at all times acted under at least implied, if not express, authorization to do so. I respectfully suggest to say anything less is grossly unfair.
For another thing, in my view, this court’s power to approve a standard or policy almost of necessity implies a right to withdraw its approval. Else, a practice, once approved, would be beyond the power of the court to change, however desirable it might be thought to be. In the circumstances of the considerable controversy engendered by the rotation and screening features which, with the best of intentions, lately were added to the temporary appointment process, I believe it wise to now take such a step.
That the Chief Judge and Chief Administrator at all times acted within their authority is borne out by the recent history of the administration of this State’s courts. For present purposes, a good point of departure may well be 1962, when an insufficient complement of Supreme Court Justices, but one of the many shortages from which the system suffered, was somewhat allayed by temporary assignments made by the Appellate Divisions pursuant to former sections 26 and 28 of article VI of the State Constitution. The assignments were to be made in accordance with policies adopted by the Administrative Board of the Judicial Conference, in whose members the power to manage the then diversified court system largely was lodged.[1] So the situation remained until 1977, when the people adopted the constitutional court reorganization plan which produced the unified system. To that end, it centralized control in the Chief Judge and, through this office, in that of Chief Administrator, in the process relegating the Administrative Board to a consultative role. It was then too that, for the first time, the ultimate power to pass on policy was placed in our court. This radical change came about during the tenure of the present Chief Judge’s predecessor and it was the latter and the then Chief Administrator who effected the necessary transition.
*39 Thus it was that the former Chief Judge, on March 31, 1978, after consultation with the Administrative Board and with the written approval of the Court of Appeals, promulgated a standard and administrative policy relating to assignment of Judges. Comprising section 445.1 (now rule 1.1) of newly adopted Rules of the Chief Judge, it stated: “Establishment of the regular hours, terms and parts of court, and assignments of judges and justices to them, other than temporary assignments, shall be done [by the Chief Administrator] in consultation and agreement with the presiding justices of the appropriate appellate divisions on behalf of their respective courts; provided that if the Chief Administrator and a presiding justice are unable to agree, the matter shall be determined by the Chief Judge” (emphasis added).
This Chief Judge’s rule constituted the first and only reference in the standards and administrative policies relating to temporary assignments of Judges. As the respondents’ brief notes, by expressly exempting temporary assignments from the consultation procedures relating to other judicial assignments, consistent with prior practice, it left full discretion to determine the manner of these temporary assignments to the Chief Administrator.
Now, when the present Chief Judge and the Chief Administrator he appointed took office, this system of appointment continued to be carried on in accordance with the approved directive of the prior Chief Judge. It is significant that during the remainder of the prior Chief Judge’s term and that of the present Chief Judge, literally dozens and dozens of New York City Civil and Criminal Court Judges were being assigned to the Supreme Court under this rule. During these years no further standard or administrative policy was ever submitted to alter the by now long-established methodology for the making of such assignments. Yet, this court never raised the slightest objection to it.[2] The conclusion is, therefore, inescapable *40 that the court assumed that its approval of rule 1.1 provided all the authorization necessary for such appointments and that, for the same reasons, the new Chief Judge, who inherited the recognized practice, had a similar right to assume that the standard and policy approval it reflected continued undisturbed.[3]
This said, I cannot gainsay that, especially from a retrospective vantage point and in the elastic context of statutory definition, it is not too difficult to interpret rule 1.1, as does the Per Curiam, as though it were not applicable to the temporary appointees with whom we are concerned (see, generally, Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed, 3 Vand L Rev 395). Nor, pragmatically, on this point, do I see any reason to take issue with the clarification this constitutes. This I do while fully appreciating the stance taken by Justice Sandler at the Appellate Division, where he expressed the thought that, while “[a]s a matter of textual analysis either construction is verbally plausible”, when “subdivision (a) of section 445.1 is considered with the group of standards and policies then promulgated of which it was an integral part * * * the construction urged by respondents appears much more probably correct” (85 AD2d, p 478). Or, as this court wrote realistically in a time frame only six months after we *41 had given written approval to rule 1.1, “though policy statements may be detailed they often are brief but broad statements of principle, identifying goals to be achieved while leaving to administrative implementation the methodology by which these goals are in fact to be reached” (Corkum v Bartlett, 46 NY2d 424, 431). For, once one ceases to wrestle with the written matter, the bottom line is that the presence in the past of silent acquiescence, indeed of at least de facto approval, cannot be denied.
Be that as it may, in casting my judicial-administrative vote for withdrawal of approval of the existing procedure for the temporary appointments at stake, I do so with confidence that the establishment of standards and policies which the Chief Judge will now propose will provide the occasion not only for constructive input incident to approval by the Court of Appeals, but, prior thereto, for at least equal input by the Presiding Justices of the Appellate Divisions, who, as members of the Administrative Board, are to play a most “significant consultative role in management decisions which affect the trial courts in each of the diverse areas of our State” (Preamble to Standards and Administrative Policies, eff April 1, 1978).
Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur in Per Curiam opinion; Judge Fuchsberg concurs in result in a separate opinion; Chief Judge Cooke taking no part.
Order modified, etc.

. The Chief Judge of the Court of Appeals and the Presiding Justices of each of the four divisions of the Supreme Court comprise the Administrative Board (Judiciary Law, § 210, subd 2).

. Instead, only as recently as December 17, 1981, effective as of January 1, 1982, the Court of Appeals expressly approved a revision of Rules of the Chief Judge, which, while renumbering rule 1.1 as rule 1.1 (a), as it bears on the present case left the rule *40 unchanged: “Chief Judge and Chief Administrator; Exercise of administrative powers and duties, (a) Establishment of the regular hours, terms and parts of court, other than temporary hours, terms and parts, and assignments of judges and justices to them, other than temporary assignments, shall be done in consultation and agreement with the presiding justices of the appropriate Appellate Divisions on behalf of their respective courts provided that if the Chief Administrator and a presiding justice are unable to agree, the matter shall be determined by the Chief Judge” (emphasis added).

. It may not be amiss to add that, except for the identity of the appointing authority, the fashion in which the Acting Supreme Court Justices were designated antedated the 1977 constitutional change by years (intervenor-appellee Judge Jack Rosenberg was first appointed some 11 years ago). Consonantly, section 3 of “standards and administrative policies”, effective April 1, 1978, with the approval of the Court of Appeals, under the subheading “Existing Rules”, decreed that: “All rules and standards of the Administrative Board of the Judicial Conference * * * shall be continued in effect as standards and administrative policies established, approved, and promulgated pursuant to Article VI, section 28(c), of the Constitution, until expressly superseded by the new rules or standards and administrative policies. Unless a contrary construction is required, references to the Administrative Board of the Judicial Conference shall be deemed references to the Chief Judge of the Court of Appeals; references to the State Administrator and State Administrative Judge shall be deemed references to the Chief Administrator of the Courts; and references to the Appellate Divisions shall be deemed references to the Chief Administrator of the Courts”.