*1000 OPINION OF THE COURT
Michael J. Dontzin, J.
INTRODUCTION
This is a combined CPLR article 78 proceeding instituted by the New York State Court Clerks Association (NYS Court Clerks) and the Court Officers Benevolent Association of Nassau County (COBNAC), on behalf of its members who are senior court clerks, respectively assigned to the Individual Assignment System Parts (IAS) in New York City and the Supreme Court in Nassau County. Apparently, these proceedings are an outgrowth of the implementation of IAS in 1986. Petitioners claim that as a result of the change from the Master Calendar System to IAS, new duties and responsibilities were imposed upon senior court clerks, which are substantially different and out of title with their 1979/84 job classification, and that those duties and responsibilities are encompassed in the 1979/84 associate court clerk title, who are paid approximately $4,500 more per annum.
By way of background, it should be noted that in 1979, the first senior court clerk title standard was issued pursuant to the new classification plan for nonjudicial employees of the Unified Court System. This title standard was amended in 1984 for descriptive purposes, making no substantive changes. In 1986, the title standard was again modified to reflect the change from the Master Calendar System to IAS.
Petitioners seek an order setting aside as arbitrary and capricious determinations of the Unified Court System’s Director of Employee Relations (Director), dated October 28 and September 3, 1986, which denied petitioners’ out-of-title grievances pursuant to their respective collective bargaining agreements with the Unified Court System. Petitioners further claim that the 1986 senior clerk title standard is invalid because it encompassed substantially different duties and responsibilities from the duties set forth in the 1979/84 senior court clerk title standard and because public hearings should have been held prior to the adoption of the 1986 title standard.
Respondents contend that petitioners’ out-of-title work grievances were properly denied because the petitioners’ duties are encompassed by both the 1986 and 1979/84 senior clerk title standards. Respondents further contend that a *1001 public hearing was not required prior to the adoption of the 1986 title standard.
DIRECTOR OF EMPLOYEE RELATIONS DETERMINATIONS
In both the combined actions, the Director ruled that the senior court clerks were not working out of title in the IAS parts according to the 1984 job classification standard.
(1) In the decision involving the New York City court clerks,[1] the Director ruled that the duties performed by senior court clerks under IAS are "reasonably related” and not "substantially different” from those outlined in the job title standard. The Director held: "Because IAS provides for the continuous supervision of each action and proceeding by a single judge, Senior Court Clerks may now be involved in an action or proceeding from inception to conclusion and therefore be required to perform a broader range of duties than previously, but the duties are not substantially different from those stated in the Title Standard for the position” (decision, at 8).
The decision also recognized that there is an overlap in the duties of the associate and senior court clerk title standards, but concluded that the two jobs were still distinct from one another. "The distinction between the positions has been, and continues to be, that Associate Court Clerks are assigned duties involving a higher degree of complexity and difficulty and also have responsibility for supervising Senior Court Clerks and other clerical personnel. Implementation of IAS has not altered this distinction.” (Decision, at 8.)
(2) In the decision involving the Nassau County senior court clerks,[2] the Director once again ruled that under IAS, the clerks were performing their duties in accordance with the 1979/84 senior court clerk title standard.
The Director held that a comparison between the 1979/84 job standard and the duties claimed to be out of title "demonstrates clearly that most of the duties alleged by the grievants to be out of title work are either stated in the title standard or are reasonably related to the standard duties.” (Decision, at 6.)
In addition, the Director also found that "to the extent that *1002 certain duties alleged by grievant to be out of title work may be new duties, they are appropriate to the title when they are a reasonable outgrowth of duties usually performed by employees in the title.” (Decision, at 8.)
The Director also reiterated the distinction between the associate court clerk and the senior court clerk, in that the former supervises the latter, and handles more complex problems.
ISSUES CONSIDERED
At this time, for reasons that are self-evident, since their resolution must precede consideration of the substantive issues involved here, the court will only consider petitioners’ contention: (a) that the Director’s determinations are arbitrary and capricious because he did not follow prior precedents or explain the reasons for not doing so; and (b) that respondent failed to hold public hearings before adopting the 1986 amended title standards.
DISCUSSION LEGAL ISSUES — PRIOR PRECEDENTS
Concededly, judicial review is limited to determining whether there is a rational basis for the administrative decision and whether under the facts and circumstances the decision was arbitrary and capricious (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]; Matter of Council of Supervisory Assns. v Board of Educ., 23 NY2d 458, 465 [1969]). The arbitrary and capricious test "relates to whether a particular action should have been taken or is justified * * * and whether the administrative action is without foundation in fact” (1 NY Jur, Administrative Law, § 184).
Where an administrative agency does not follow its own precedents in deciding a case involving essentially the same facts, the agency must set forth its reasons for the departure, or the reviewing court must reverse the agency decision as arbitrary and capricious as a matter of law. (Matter of Field Delivery Servs. [Roberts], 66 NY2d 516 [1985].) Administrative agencies like courts are not necessarily bound by stare decisis. They may correct, overrule, or modify prior incorrect decisions. However, "[t]he policy reasons for consistent results, given essentially similar facts, are * * * to deal impartially with litigants; promote stability in the law; allow for efficient use of the adjudicatory process; and to maintain the appearance of justice” (Matter of Field Delivery Servs. [Roberts] *1003 supra, at 519). Put simply, stare decisis must be respected in order to insure that the rule of law governs in a viable society, absent good cause to overrule or not follow that doctrine.
In the Field case (supra) the Unemployment Insurance Appeal Board ruled that delivery persons were independent contractors, in contrast with its prior determinations on essentially the same facts that an employer-employee relationship existed. The court in ruling that the Board’s determination was arbitrary and capricious as a matter of law, since the Board gave no explanation as to why it reached a different result from past decisions, stated: "From the policy considerations embodied in administrative law, it follows that when an agency determines to alter its prior stated course it must set forth its reasons for doing so. Unless such an explanation is furnished, a reviewing court will be unable to determine whether the agency has changed its prior interpretation of the law for valid reasons, or has simply overlooked or ignored its prior decision * * * Absent such an explanation, failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made”. (Supra, at 520.)
This ruling was later followed in Matter of Health Related Nutrition Servs. (Roberts) (123 AD2d 466 [1986]), where the court reversed a decision of the Unemployment Insurance Appeal Board stating: "Even though there may be substantial evidence in the record to support the Board’s determination, its failure to explain its inconsistent determinations as to the status of dietician consultants requires reversal”. (Supra, at 467-468.)
In their petition, the petitioners have included several prior determinations made by the Director which they contend are inconsistent with the determination here. Among those are the following:
In Matter of Miles, Senior Ct. Clerk (Employee Relations File No. 85/18, decided Dec. 20, 1985), the Director ruled that the assignment of a senior court clerk in Nassau County to Criminal Part I was out of title for senior court clerk and more appropriate for an associate court clerk. The Director found that the court clerk assigned to Criminal Part I, an assignment part, handled arraignments, conferences, sentences and dispositions, monitoring the calendar and that of trial parts to which cases not disposed of are assigned. Under *1004 these circumstances, and taking into consideration the volume of work, the Director ruled that Criminal I was functioning as a specialized intake part.
In Matter of Suffolk County Ct. Employees v State of N. Y. Ct. Sys. (a contract grievance arbitration), a decision dated December 2, 1987, the arbitrator concluded that the assignment of senior court clerks to Trial Term Part I (an assignment concededly performed by associate court clerks) for varying short period of time constituted out-of-title work. The arbitrator there rejected the arguments that the short-term assignments, ranging from 1 to 10 days, constitute reasonably related duties and are in the senior court clerks specifications or that many of the duties between the seniors and associates overlapped and therefore the assignment was permissible.
In Matter of Murray (Employee Relations File No. 83/92), the Director in a decision dated June 20, 1984, ruled that a senior court clerk, Supreme Court, Hauppauge, New York, who was assigned to the Assignment/Calendar Part of Special Term, Part V, performed duties which were out of title and more appropriate to the position of an associate court clerk. The petitioner, prior to the determination, was replaced in her assignment by an associate court clerk. Among the duties which were found to be out of title include: "supervision of three Senior Court Officers; calling and annotating the calendar; compiling statistical information; scheduling cases; and responding to unusual oral and written inquiries from the public lawyers and litigants.”
In Matter of Farrell (Employee Relations File No. 81/120), the Director, in a decision dated August 9, 1982, ruled that a senior court clerk with the Suffolk County District Court performed out-of-title duties when assigned as a part clerk in the arraignment part. Among the duties found to be out of title include: "preparing, calling and annotating the calendar, supervising the other non-judicial employees assigned to the part, and distributing the case load to the trial parts.” The Director concluded that "grievant was assigned for a term to á specialized part which operates on a full-time basis. He performed part clerk duties with substantial independence from supervision. Grievant therefore was working out of title as a 'Senior Court Clerk’ ”.
In Matter of Champlin, Senior Ct. Clerk (Employee Relations File No. 83/39), a decision dated July 5, 1983, the Director ruled that a senior court clerk assigned to replace the *1005 associate court clerk on a temporary basis was out-of-title work. The out-of-title duties included the following: supervising the personnel of the part (Criminal Term, Part XI); making sure files were prepared and in order for the calendar call; calling the calendar; arranging for transportation of prisoners to and from detention; liaison with other agencies (i.e., District Attorney); maintaining statistical information re dispositions, answering inquiries from attorneys and litigants, etc. Prior to that assignment, the senior court clerk only made up the calendar, marked it as it was called and performed other duties assigned by the associate court clerk.
A fair reading of these prior determinations leads this court to conclude that the factual situations considered by the Director are essentially the same as here. The thrust of the prior determinations is that supervision of motion, conference and calendar parts, etc., performed in so-called specialized parts under the Master Calendar System were the responsibility of associate and principal court clerks and not within the scope of the duties of senior court clerks. These former specialized parts may be fairly characterized as "high volume specialized parts, operating on full time basis”. However, a color-able if not reasonable argument can be made that the IAS parts are also "high volume specialized parts operating on a full time basis”, given the high volume of cases in IAS parts, especially in New York City, and the multiple and varied duties performed there, many of which are the very duties determined in the past to be the responsibility of associate or principal court clerks. The Director’s determinations involved here offer no explanation as to why these duties are now considered to be different, or to explain why a different result is reached here than in the past. Indeed, as previously stated, the Director did not even address this issue.
It is no answer, as argued by respondents, that the out-of-title grievances were sustained in the past because the 1979/ 84 senior court clerks title standard did not encompass supervision of a "full time specialized part”, and IAS parts are not "full time specialized parts”. This argument seems to beg the question. It’s not the forum that is controlling, but the duties that must be performed therein. If the duties performed in the IAS parts are substantially different from those that were performed in the full-time specialized parts under the Master Calendar System, then the Director in his determination should have explained that difference, or explained why in the present context of the IAS system those duties are no longer *1006 the responsibility of associate or principal court clerks. In the present state of the record, where at least facially or color-ably, a reasonable inference, if not a determination, can be made that the duties performed in the full-time specialized parts under the Master Calendar Systems are the same as performed in the IAS Part on a full-time basis, then it was incumbent on the Director to explain why those duties are not the same, or to give an explanation as to why a different conclusion is reached now than in the past.
It is also no answer that the adoption of the 1986 title standard in and of itself made moot the issue of prior precedents. To hold otherwise would permit respondents or any agency similarly situated to change title standards of a civil service class without any accountability.
LEGAL DISCUSSION — PUBLIC HEARING REQUIREMENT
The issue of whether a public hearing were required before the adoption of the 1986 senior court clerk title standard was not addressed by the Director as being out of the scope of the grievance procedure. It must be addressed here.
Judicary Law § 211 (1) provides:
"The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application to the unified court system throughout the state, including but not limited to * * *
"(d) Personnel practices affecting nonjudicial personnel including: title structure, job definition, classification, qualifications, appointments, promotions, transfers, leaves of absence, resignations and reinstatements, performance ratings, removal, sick leaves, vacations and time allowances. Statewide standards and policies concerning personnel practices relating to nonjudicial personnel shall be consistent with the civil service law, and shall be promulgated after a public hearing at which affected nonjudicial employees or their representatives shall have the opportunity to submit criticisms, objections and suggestions relating to the proposed standards and policies.”
22 NYCRR 25.45, "Classification Plan Pursuant to Section 39 of the Judiciary Law”, provides:
"(a) The Chief Administrator of the Courts shall establish a classification plan for the positions of all nonjudicial officers and employees of the unified court system who become employees of the State of New York pursuant to section 39 *1007 (formerly section 220) of the Judiciary Law, which shall provide for the classification of positions in accordance with duties required to be performed in title in these positions, and in accordance with the responsibilities of the position and the volume of work in the court or court-related agency in which the position exists. The Chief Administrator shall also place into this new classification plan the positions of all other State-paid nonjudicial officers and employees in the unified court system and may make changes in the classification of those positions as may be deemed necessary. As part of this plan, all positions shall be allocated to a salary grade.
"(b) The classification plan established pursuant to subdivision (a) of this section shall not be implemented by the Chief Administrator until after:
"(1) public hearings at which affected court employees or their representatives may comment on the plan”.
It would appear that under section 211 of the Judiciary Law administrative actions taken by the Chief Administrator of the Unified Court System concerning "title structure, job definition[s],” etc. (as set forth in the first complete sentence of § 211 [1] [d]), do not require a public hearing before becoming operative. By contrast, ”[s]tatewide standards and policies concerning personnel practices relating to nonjudicial personnel”, etc. (as set forth in the second complete sentence of § 211 [1] [d]; emphasis added), do require a public hearing before being promulgated. (See, Corkum v Bartlett, 46 NY2d 424.)[3]
The rationale of such a construction is that "statewide standards and policies” can only be set by the Chief Judge of the Court of Appeals, after consultation with the Administrative Board (the Chief Judge and Presiding Justices of the Appellate Divisions of the four judicial departments) and approval of the Court of Appeals. (NY Const, art VI, § 28 [c]; Corkum v Bartlett, supra,, at 430.) Given this construction, a public hearing was not mandated by section 211 of the Judiciary Law for the amended 1986 title standards for senior court clerk.
On the other hand, a reasonable construction of 22 NYCRR 25.45 leads to conclusion that a public hearing was necessary before the 1986 senior court clerk title standard was adopted and put into effect. The first sentences of section 25.45 *1008 (a) and (b) relate to nonjudicial officers and employees who were taken into the system in 1977 under section 39 of the Judiciary Law. In other words, those who were not part of the Unified Court System (i.e., employees of the Criminal Court of the City of New York, Civil Court of the City of New York, Family Court, County Courts, District Courts, etc.) before the State assumed all budgetary responsibilities for the operation of these courts (see, Matter of Uzenski v Nadel, 112 AD2d 684, 685 [3d Dept 1985]). The second sentence of section 25.45 (a) provides that "The Chief Administrator shall also place into this new classification plan the positions of all other State-paid nonjudicial officers and employees” (emphasis added). Subdivision (b) of that section then unambiguously and specifically mandates that the classification plan established by the Chief Administrator "shall not be implemented * * * until after * * * public hearings at which affected court employees or their representatives may comment” (22 NYCRR 25.45 [b] [!])•
Notwithstanding respondent’s contention to the contrary, the court in Uzenski did not hold that 22 NYCRR 25.45 was not applicable to nonjudicial employees such as petitioners here (supra, at 686). Moreover, the facts in Uzenski are clearly distinguishable. The petitioners there were not concerned with the classification of their position as court attendants (App Div, 1st Dept) but the status of a promotional position (senior court attendant) which they claim was promised to them after one year of satisfactory service (supra, at 686). The petitioners here are concerned with the classification plan for their position as senior court clerk, as provided for in the 1986 senior court clerk title standard.
In view of the foregoing discussion and decisions on the issues considered, it is unnecessary, at this time, to consider whether there is a rational basis for the substantive determinations of the Director challenged here.[4]
Accordingly,
(1) the order the Director of Employee Relations is set aside as being arbitrary and capricious, for the limited reason *1009 heretofore stated, and the matter is respectfully remanded for the purpose of the Director of Employee Relations explaining or setting forth the basis or reasons for not following prior precedents or indicating why a different result was reached here.
(2) This matter is respectfully remanded for the purpose of conducting a public hearing in accordance with and as provided for 22 NYCRR 25.45 (a), (b) (1).

. Matter of Senior Clerk-JG21 (Employee Relations File No. 86149). Determination, apparently issued in October 1986.

. Matter of Senior Ct. Clerks (Employee Relations Files Nos. 86/7, 86/ 31, 86/39). Determination dated September 3, 1986.

. This construction seems to be supported by what appears to be the dicta in Corkum v Bartlett (46 NY2d 424), since under the facts of that case the court did not specifically rule on this issue.

. The court notes, in passing, that the collective bargaining agreements for COBNAC and NYS Clerks did not appear to have the same provisions for determining "substantially different duties” from those stated in job specifications. The issue of "reasonably related” and "substantially different” duties were the focal point of the Director’s consideration of the grievance, and was the apparent basis of the Director’s determinations challenged here.