OPINION OF THE COURT
 

 Alexander, J.
 

 We are called upon on this appeal to resolve the issue left open in
 
 Cove v Sise
 
 (71 NY2d 910): namely, whether the Classification Review Board of the Unified Court System (the
 
 *386
 
 Board) has the authority to reclassify job classifications established by the Chief Administrative Judge (CAJ) when it finds that such classifications are "unjust and inequitable”. We conclude that the Board does not have such authority and that the classification review process, as established by the Chief Judge, was not intended to confer such power and authority on the Board.
 

 Petitioner, the Chief Administrative Judge of the Unified Court System, instituted this article 78 proceeding to review a determination by the Board finding that the duties and responsibilities of secretaries classified under the title "Secretary to Judge” (JG-14) are virtually identical to the duties and responsibilities of secretaries classified under the title "Senior Secretary to Judge” (JG-17), and concluding that the separate classification of secretaries working in those positions is therefore "unjust and inequitable”. The Board directed petitioner to reclassify all personal secretaries working for Judges in County, Family and Surrogate’s Courts to the title "Senior Secretary to Judge” (JG-17).
 

 I.
 

 Pursuant to the Unified Court Budget Act of 1976 (L 1976, ch 966, as amended; now codified as Judiciary Law § 39), approximately 8,500 locally paid court employees throughout the State were transferred to the State payroll as part of the State’s assumption of local court costs. In order to ensure the orderly transfer of these new employees to the State payroll, the Legislature directed the Administrative Board of the Judicial Conference to "adopt a classification structure for all non-judicial officers and employees * * * of the state of New York” (Judiciary Law § 39 [8] [a]). The classification scheme was to be established "in accordance with duties required to be performed in title in these positions and in accordance with the responsibilities of the position and the volume of work in the court or court-related agency in which the position exists” (Judiciary Law § 39 [8] [a]).
 
 [1]
 

 By administrative order dated May 28, 1979, the CAJ,
 
 *387
 
 acting on behalf of the Chief Judge, adopted a new Classification Plan (Plan) for all nonjudicial positions in the Unified Court System. The Plan included title standards for the secretarial and stenographic series, including the title "Secretary to Judge” having a salary grade of JG-14, and the title "Senior Secretary to Judge” having the higher salary grade of JG-17.
 
 [2]
 

 Interveners are personal secretaries to Surrogate or County Court Judges in various upstate counties who worked either in single-Judge County Courts with combined filings of indictments and civil actions totaling less than 650 or Surrogate’s Courts having fewer than 10 employees. Accordingly, they were each classified to the new title "Secretary to Judge” and thus received the lower salary grade.
 
 [3]
 
 They filed classification and allocation appeals with the CAJ challenging the classification of their former secretarial positions, contending that they should be reclassified to the title "Senior Secretary to Judge” and paid a salary commensurate with that position. The CAJ denied these appeals. Each intervenor then appealed the CAJ’s decision to the Board. The Board concluded that the duties and responsibilities of the "Secretary to Judge” class are equivalent to those of secretaries classified under the "Senior Secretary to Judge” title, and granted intervenors’ classification appeals. Petitioner was directed to "reclassify to Senior Secretary to Judge, JG-17, all positions of personal secretaries to judges in County, Family and Surrogate’s Courts which were classified as Secretary to Judge pursuant to the Plan”.
 
 [4]
 
 This article 78 proceeding seeking to annul the Board’s determination insofar as it directed the CAJ to reclassify secretarial positions in the County, Family and Surrogate’s Courts followed.
 

 
 *388
 
 Finding the Board’s determination to be rational and in accordance with the classification criteria specified in Judiciary Law § 39 (8) (a), Supreme Court confirmed the determination and dismissed the petition. The court further held that the Board’s review authority would be "meaningless” without the remedial power to reclassify positions where it finds that an existing job classification is unjust and inequitable. The Appellate Division affirmed for the reasons stated by Supreme Court, and this court granted leave to appeal.
 

 II.
 

 The CAJ, acting on behalf of the Chief Judge, is constitutionally charged with the responsibility to "supervise the administration and operation of the unified court system” (NY Const, art VI, § 28 [b];
 
 Corkum v Bartlett,
 
 46 NY2d 424, 429). We have recognized that the administrative powers of the CAJ are "complete” and that he "may employ them fully when and while and to the extent that they have been delegated to him”
 
 (Corkum v Bartlett,
 
 46 NY2d, at 429,
 
 supra).
 
 Among the enumerated powers specifically and exclusively delegated to the CAJ by the Chief Judge is the power to "adopt classifications and allocate positions for nonjudicial officers and employees of the unified court system, and revise them when appropriate” (22 NYCRR 80.1 [b] [16]).
 

 A process for reviewing the CAJ’s classification of nonjudicial employees has been authorized by the Chief Judge acting pursuant to his constitutional powers as the State’s chief judicial officer (NY Const, art VI, §28; 22 NYCRR 25.41). Under the rules promulgated by the Chief Judge, "an employee aggrieved by the classification of his or her position in the classification plan established effective May 28, 1979, including the allocation of his or her position to a salary grade” may seek classification review (22 NYCRR 25.41). The employee must first appeal to the CAJ, who will review the employee’s classification and determine if any adjustment in title or salary grade is required (22 NYCRR 25.41 [a]). If the employee is dissatisfied with the CAJ’s decision, a further appeal to the Board is permitted (22 NYCRR 25.41 [b]). The Board is specifically authorized "to determine each appeal” and its determinations constitute administrative orders subject to review only "in a proceeding brought by either the employee, an employee organization, or the [CAJ] pursuant to article 78 of the CPLR” (22 NYCRR 25.41 [e]). The CAJ has no
 
 *389
 
 supervisory authority over the Board, whose members are independently appointed by the President of the State Civil Service Commission, the State Comptroller and the Chairman of the Public Employment Relations Board (22 NYCRR 25.41 [b]). Nor is there any procedure for the CAJ to independently review the Board’s determination prior to its becoming final.
 

 Acting pursuant to his delegated authority to administer the State court system, the CAJ established the Board by administrative order providing, in relevant part, as follows: "The Classification Review Board shall hear and determine appeals from the determination of the Chief Administrator made pursuant to section [25.41 (a)] of the Rules of the Chief Judge. An appeal may be brought either by the aggrieved employee, or his employee organization on his behalf, and shall be limited to review of the classification of the employee’s position and the allocation of his position to a salary grade. The Classification Review Board
 
 may reverse or modify a determination of the Chief Administrator upon persuasive evidence that the determination is unjust and
 
 inequitable” (Administrative Order, 80/9, Jan. 11, 1980 [emphasis added]). Thus, the CAJ — interpreting the Chief Judge’s direction that the Board "determine each appeal” — empowered the Board to review his orders relating to classifications and allocations, and to reverse or modify them if, in the Board’s determination, they are "unjust and inequitable”. The critical question raised on this appeal, in addition to whether the Board’s decision invalidating intervenors’ classifications was rational, is whether the Board’s power to "reverse or modify” classifications found to be unjust and inequitable includes the power to "reclassify” those positions.
 

 III.
 

 Initially, petitioner contends that the classifications were rationally premised on the volume and complexity of work handled by the particular court, and that secretaries working in multiple-judge courts, courts with a greater number of nonjudicial employees, or courts processing a greater number of annual filings reasonably can be expected to have a heavier workload than secretaries working in smaller, lower volume courts. Inasmuch as the challenged classifications had a rational basis, argues petitioner, the Board’s decision invalidating them was arbitrary and capricious. This contention is without merit. In urging that the Board was required to
 
 *390
 
 uphold the challenged classifications if it found them to be rational, petitioner misapprehends the applicable standard of review. Unlike determinations of the Board — which "will not be disturbed in the absence of a showing that they are wholly arbitrary or without any rational basis”
 
 (Cove v Sise,
 
 71 NY2d 910, 912,
 
 supra)
 
 — classification determinations of the CAJ may be reversed or modified if they are found to be "unjust and inequitable” (Administrative Order of Chief Administrative Judge, 80/9, Jan. 11, 1980).
 
 [5]
 

 Here, the Board found that the respective classifications of interveners were unjust and inequitable because the duties and responsibilities set forth in the two job titles under consideration were virtually identical.
 
 [6]
 
 Further, the Board reasonably determined that the volume of work handled by a court — the purported basis for the classifications urged by petitioner — is a proper classification factor only insofar as it influences the duties and responsibilities of the position at issue. Inasmuch as this aspect of the Board’s determination was based on all three classification standards specified in Judiciary Law § 39 (8) (a) and is supported by evidence in the record, it must be upheld
 
 (see, Cove v Sise,
 
 71 NY2d, at 912,
 
 supra).
 

 
 *391
 
 Petitioner’s contention that the Board lacked the power to reclassify intervenors is persuasive, however. Petitioner contends that, upon finding the challenged classifications to be unjust, the Board was required to remand the matter to the CAJ — "the constitutionally and statutorily designated classifying authority” — for appropriate action. Petitioner argues that the Board exercises strictly a review function and, although it may reverse or modify a particular classification, it may not make policy by "restructuring” the classification scheme created by the CAJ. We agree.
 

 The classification power lies at the heart of the CAJ’s authority to administer the unified court system
 
 (see generally, Corkum v Bartlett,
 
 46 NY2d 424,
 
 supra).
 
 It is thus inconceivable that the Chief Judge, in authorizing the Board to "determine each appeal”, intended to permit the Board to simultaneously exercise the same power. Such a result would seriously undercut the CAJ’s authority and would threaten the orderly administration of the court system. We conclude, therefore, that the Board’s power to "determine” a classification appeal does not authorize the Board to reclassify court employees.
 

 Moreover, since the power to adopt and revise classifications has been exclusively delegated to the CAJ, the Board cannot also have this power unless it has been lawfully subdelegated to the Board by the CAJ. Petitioner contends, however, that although the CAJ authorized the Board to "reverse or modify” classification determinations, the Board was never authorized to reclassify employees. This contention has merit. Although the CAJ is authorized to subdelegate his classification power "to any deputy, assistant, administrative judge or court” (22 NYCRR 25.4 [a]; 25.5), there is no basis in the record for concluding the CAJ attempted to subdelegate the classification power to the Board. In any event, there is not the slightest indication from the regulations that the CAJ is authorized to divest himself of a core administrative power and permit it to be exercised by an independent body over which he has no supervisory authority
 
 (cf.,
 
 22 NYCRR 25.29 [f] [providing for review by the CAJ of disciplinary action taken against employees by officials designated by the Chief Judge]). There are limits beyond which any subdelegation must be viewed as an unlawful abdication of responsibility. Indeed, this is obvious from the very nature of subdelegation which means "the transmission of authority from the heads of agencies to
 
 subor
 
 
 *392
 

 dinates”
 
 (1 Davis, Administrative Law § 3:16, at 216 [2d ed 1978];
 
 see, e.g., Labor Bd. v Duval Jewelry Co.,
 
 357 US 1 [involving the subdelegation to a Hearing Officer of the authority to issue a preliminary ruling on a motion to revoke a subpoena]). Surely, if the CAJ does not retain any supervisory authority over the official exercising the delegated authority, and may not review decisions made by that official, such official is not a "subordinate” of the CAJ and any attempted subdelegation will be held invalid.
 
 [7]
 

 As previously noted, the CAJ exercises no supervisory authority over the Board, the determinations of which are administrative orders reviewable only in an article 78 proceeding. The Board, therefore, cannot reasonably be viewed as a "subordinate” of the CAJ; indeed, insofar as the validity of a challenged classification is concerned, just the reverse is true. Consequently, even were we to assume the CAJ attempted to subdelegate his classification power in authorizing the Board to "reverse or modify” classification determinations, such subdelegation would be invalid.
 

 Thus, we reject interveners’ contention that the Board was authorized, upon determining that their job classifications were "unjust and inequitable”, to order petitioner to reclassify them to a particular position and salary grade. The power to adopt and revise classifications has been exclusively delegated to the CAJ by the Chief Judge and, under the existing regulatory scheme, only the CAJ, or a designated representative over whom the CAJ retains supervisory authority, may exercise that power. The Board’s authority to "reverse or modify” classification determinations, therefore, must be viewed merely as permitting the Board to invalidate the specific classification challenged, or to modify the challenged
 
 *393
 
 classification in a way that does not impinge upon the CAJ’s exclusive classification authority. Any further remedial action must be performed by the CAJ who is the official in charge of the over-all administration of the court system, and thus vested with the authority to make classifications and allocations.
 

 Accordingly, the order of the Appellate Division should be modified by annulling the determination of the Classification Review Board insofar as it directed reclassification of the secretarial positions and, as so modified, affirmed.
 

 Judges Simons, Kaye, Titone and Hancock, Jr., concur; Chief Judge Wachtler and Judge Bellacosa taking no part.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . Effective April 1, 1978 the Administrative Board of the Judicial Conference was abolished and its powers were assumed by the Chief Judge of the Court of Appeals, who was appointed Chief Judicial Officer of the Unified Court System (NY Const, art VI, §28 [b]). The Chief Judge was directed to appoint a chief administrator who "shall supervise the administration and operation of the unified court system” (NY Const, art VI, § 28;
 
 see, Corkum v Bartlett,
 
 46 NY2d 424, 428-429).
 

 [2]
 

 .
 
 According to petitioner, as of April 1, 1987, the hiring rate for the Secretary to Judge title (JG-14) was $22,160 and the salary range was $23,137 to $28,999. In contrast, the hiring rate for the Senior Secretary to Judge title (JG-17) was $26,238 and the salary range was $27,359 to $34,085.
 

 [3]
 

 . Under the Plan, the title "Secretary to Judge” is reserved for secretaries working for Judges in City and District Courts, and small Family, County, and Surrogate’s Courts. The title "Senior Secretary to Judge” is reserved for secretaries working in the Court of Claims; all Supreme Courts; all County Courts with two or more full-time Judges or with one full-time Judge and combined filings of indictments and Supreme Court civil actions exceeding 650; all Family Courts with two or more full-time Judges; and all Surrogate’s Courts with 10 or more nonjudicial employees.
 

 [4]
 

 . The Board denied intervenors’ allocation appeals, concluding that no basis had been shown for reallocating the position of "Secretary to Judge” to a higher salary grade than JG-14.
 

 [5]
 

 .
 
 Petitioner’s reliance on
 
 State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.
 
 (48 NY2d 276) in support of a rational basis test is misplaced. Although, in that case, we concluded the State Human Rights Appeal Board exercises the same limited scope of review over decisions of the State Division of Human Rights that a court ordinarily does when passing on the determination of an administrative agency, we explicitly rested our conclusion on Executive Law § 297-a (7) which restricts the review power of the Appeal Board to determining whether an order of the Division is arbitrary or capricious, or is supported by substantial evidence. There is no such statute involved here.
 

 [6]
 

 . The Board found that both title standards are in the exempt class; that incumbents provide personal and confidential legal secretarial services but that employees classified as "Secretary to Judge” may also perform clerical and reporting duties; that the "Typical Duties” listed in the two title standards are virtually identical except that the "Secretary to Judge” class may perform additional duties relating to the preparation of court calendars and dockets; that the lists of required "Knowledges, Skills and Abilities” are substantially the same; and that although the dictation and typing speeds of the "Senior Secretary to Judge” class are supposedly higher, secretarial appointees were not tested for the speeds specified in the title standards. Finally, although the minimum qualifications of the two titles differed in that appointees to the "Senior Secretary to Judge” class generally are required to have one more year of legal secretarial experience, the Board found that these qualifications were instructive rather than mandatory.
 

 [7]
 

 . This idea was expressed by President Kennedy in an address before the United States Congress which has come to embody the prevailing view on subdelegation
 
 (see,
 
 1 Davis, Administrative Law § 3:17, at 219 [2d ed 1978]). In that address, President Kennedy stressed the need for more widespread delegations of authority within agencies and stated that "[s]uch delegation would not be an abnegation of responsibility
 
 if the agency retained a discretionary right of review”
 
 of all decisions made pursuant to the delegated authority (107 Cong Rec 5849 [1961] [emphasis added];
 
 see,
 
 1 Davis, Administrative Law § 3:17, at 219;
 
 see also, Labor Bd. v Duval Jewelry Co.,
 
 357 US 1 [upholding delegation where NLRB retained authority
 
 to
 
 make final decision on whether to revoke subpoena];
 
 Jay v Boyd,
 
 351 US 345 [upholding Attorney General’s delegation of authority to suspend deportation where exercise of authority could be reviewed by Board of Immigration Appeals]).