OPINION OF THE COURT
Simons, J.
These proceedings arise out of the classification of positions and allocation of salary grades for: (1) secretaries working for Judges in trial and appellate courts and (2) clerks in those courts. In each case, the Chief Administrative Judge had differentiated between employees at different court levels. On appeal, the Classification Review Board (the Board) confirmed the Chief Administrative Judge’s classifications for secretaries but modified the order for clerks, directing that trial and appellate clerks be classified the same. These article 78 proceedings were instituted by employee organizations and the Chief Administrative Judge challenging various parts of the Board’s decisions. For the reasons which follow, we conclude that the Board’s decisions concerning the classifications in both matters were rational. The appropriate remedy in the secretaries’ case is reinstatement of the Board’s determination and in the clerks’ case, remittal to the Chief Administrator for reclassification and allocation of the clerks’ positions.
I
In 1976 the Legislature enacted the Unified Court Budget Act by which the State assumed the responsibility for local court costs and transferred approximately 8,500 locally paid court employees to the State payroll (L 1976, ch 966, as amended; now codified as Judiciary Law § 39). Subdivision (8) (a) of section 39 authorized the Administrative Board of the Judicial Conference to "adopt a classification structure for all non-judicial officers and employees * * * of the state of New York” and required that their positions be classified according to "duties required to be performed in title”, "responsibilities of the position” and the "volume of work in the court or court- *468 related agency in which the position exists.” The Administrative Board of the Judicial Conference was subsequently abolished by constitutional amendment in November 1977 and its powers were assumed by the Chief Judge of the Court of Appeals (NY Const, art VI, § 28 [b]). He became the chief judicial officer of the State and, with the advice and consent of the Administrative Board of the Courts (consisting of the Chief Judge and the Presiding Justices of the four Appellate Divisions), now appoints a Chief Administrator to "supervise the administration and operation of the unified court system” (NY Const, art VI, § 28 [a], [b]). By administrative order dated May 28, 1979, the Chief Administrator (CAJ) adopted a new Classification Plan for all nonjudicial employees in the Unified Court System.[1] It classified each nonjudicial position to a new Unified Court System title and established standards for the duties and responsibilities of the titles and the knowledge, skills and abilities required to perform those duties and responsibilities. Each title was then allocated to a salary grade, retroactive to April 1, 1977.
Concurrent with the establishment of the new Plan, the Chief Judge created a comprehensive appeal procedure which authorizes aggrieved employees to seek review by the CAJ (see, 22 NYCRR 25.41 [a]) and if dissatisfied after that review, to appeal to an independent three-member Classification Review Board composed of classification experts from outside the judicial branch (see, 22 NYCRR 25.41 [b]). The Board is authorized to reverse or modify a classification of the CAJ found to be "unjust and inequitable” (Administrative Order of Chief Administrative Judge, 80/9, Jan. 11, 1980; Matter of Bellacosa v Classification Review Bd., 72 NY2d 383, 390). Its determinations are administrative orders subject to judicial review in an article 78 proceeding brought by an aggrieved employee, an employee organization or the CAJ (22 NYCRR 25.41 [e]). Unlike the standard of review of the CAJ’s decision, which the Board may reverse or modify if it is "unjust and inequitable” (see, Matter of Bellacosa v Classification Review Bd., 72 NY2d 383, 390, supra), the Board’s determination will not be disturbed by the courts unless it is arbitrary or irrational (Cove v Sise, 71 NY2d 910, 912).
*469 With that background we turn to the two proceedings before us.
II
The Secretaries’ Case
Historically, secretaries to Appellate Division Justices were State employees occupying State salary grades and personal secretaries to Judges in trial-level courts were ungraded and paid pursuant to local contracts. Under the Plan all secretaries to Supreme Court Justices, Surrogates, and Appellate Term Justices in New York City were classified into three titles and allocated salary grades as follows: personal secretaries to Justices of the Supreme Court, Judges of the Court of Claims and Judges of the larger Family, County and Surrogate’s Courts were classified as Senior Secretary to Judge (JG-17); secretaries working for Administrative Judges were classified as Principal Secretary to Judge (JG-19); secretaries to Appellate Division Justices were classified as Secretary to Appellate Division Justice (JG-21).
Petitioner, the Association of Secretaries to Justices of the Supreme and Surrogate’s Courts in the City of New York[2] (Secretaries) appealed these classifications and salary allocations to the CAJ. He denied the appeals and the Secretaries then filed appeals to the Board. They contended that Senior Secretaries should be elevated to the Principal Secretary title because of the equivalence in their work or, in the alternative, that all secretarial titles should be allocated to the highest secretarial grade, JG-25.
The Board upheld the CAJ’s classification and allocation of salary grades and dismissed the appeal. It ruled that the Secretaries had failed to demonstrate that personal secretaries who were reclassified to the title of Senior Secretary to Judge performed duties that were equivalent to the duties performed by those personal secretaries who served administrative Judges, classified to the higher title of Principal Secretary to Judge. The Board found that the administrative duties of a *470 Principal Secretary to Judge "were substantially broader in scope and more demanding than those of Secretaries to Supreme Court Justices not so assigned” (Board Administrative Order 86-34, May 29, 1986, at 16). The Board also rejected the Secretaries’ claims that all secretaries are equivalent and should be allocated to JG-25, stating, "Q]ust as there are differences in levels of judges, it seems only reasonable that there be differences in levels of their personal secretaries.” These differences were found to be reflected in "the degree of sensitivity, importance or criticality within the court system of the judgments the secretary must make and the matters he or she deals with, and which impact on the programs or activities for which the judge is responsible” (id., at 17).
Upon reconsideration, the Board rejected the Secretaries’ claim that its failure to modify the Plan and reclassify all of its members to JG-21, the salary grade of the Secretary to Appellate Division Justice title, was contrary to its earlier decision in Matter of Law Assistants Assn. (Board Administrative Order 82-1). The Board noted that Matter of Law Assistants Assn., in which it directed the upward reclassification of trial level law assistants to the same salary grades as appellate level law assistants, did not presume a similar finding with respect to all nonjudicial employees.
Petitioner then commenced this article 78 proceeding to set aside the Board’s decision. Supreme Court granted the petition finding that the Board’s determination was "arbitrary and capricious * * * insofar as the members of the Association were graded lower than the Secretaries to Appellate Division Justices.” It held that the Board, which had previously rejected classifications based on "criticality” of function involving law assistants in the Supreme Court and Appellate Divisions in Matter of Law Assistants Assn., acted "contrary to law” in recognizing such distinctions between the trial level and appellate level secretaries. Instead of remanding the matter to the Board, the court directed the reallocation of petitioner’s titles from judicial salary grades JG-17 and JG-19 to the salary grade allocated to Secretaries to Justices in the Supreme Court, Appellate Division (JG-21) and remanded the matter to respondent Office of Court Administration for action consistent with its decision.
The Appellate Division modified by affirming the annulment of the Board’s determination, but it deleted the directive that the secretaries’ titles be reallocated to salary grade JG-21, *471 reasoning that this court’s decision in Matter of Bellacosa v Classification Review Bd. (72 NY2d 383, supra) required a remand to the CAJ for a determination of the salary grade to be allocated to the three positions. We granted the motion of respondent Board and the cross motion of petitioner association for leave to appeal.
The CAJ and the Board contend that there is a rational basis in the record for the Board’s determination upholding the classification of different titles for personal secretaries to Judges in trial and appellate level courts and, therefore, it should not have been disturbed by the courts below. In its determination, the Board reasoned that the close personal relationship of trust and confidence between a Judge and his secretary and the differences in levels of Judges, based upon their responsibilities, justify differences in the classification of personal secretaries. It found that the CAJ’s classifications were based on differences in the sensitivity and importance of the duties and responsibilities to be performed by secretaries within the court system. The Board’s determination was based on the classification standards outlined in Judiciary Law § 39 (8) (a) (see, supra, at 467-468) and contained a rational basis supported in the record (see, Cove v Sise, 71 NY2d 910, 912, supra; Matter of Bellacosa v Classification Review Bd., 72 NY2d 383, 390, supra).
The Secretaries, for their part, assert that the Board’s decision was arbitrary and capricious under our decision in Matter of Field Delivery Serv. (Roberts) (66 NY2d 516, 517) because the Board disregarded one of its prior holdings (i.e., Matter of Law Assistants Assn., Board Administrative Order 82-1, Feb. 5, 1982). In Field we held that a decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious. The Board explained the different classifications in this case, however, emphasizing that "more than any other subordinate” the secretary bears a "close personal relationship” with the Judge, a working relationship which is inherently different from the role of law assistants who perform their functions in a pool environment supervised by a higher level law assistant. In addition, the Board noted that the greater "criticality” of the judicial functions and the increased administrative responsibilities of Judges of the appellate courts, as evidenced by the Legislature’s allocation of increased salaries for appellate Judges, require that personal secretaries, who *472 work on a one-to-one basis with the Judge, exercise more sensitive, important and critical responsibilities. In sum, the Board’s decision in Law Assistants was properly addressed and distinguished and does not compel a finding that secretaries of appellate and trial court Judges should be classified in the same title and allocated the same salary grade (see, Knight v Amelkin, 68 NY2d 975, 977-978 [requiring a showing of existence of several earlier determinations by Zoning Board with sufficient factual similarity to warrant an explanation from Board]). The Secretaries’ remaining arguments are without merit and, accordingly, the determination of the Board upholding the CAJ’s classification and salary grade allocations should be reinstated.
¡II
The Clerks’ Case
Prior to April 1977, clerks in the appellate courts were State employees and Supreme and Surrogate’s Court clerks were employees of the localities in which they worked. Both trial and appellate clerks were classified as Court Clerk I, Court Clerk II and Court Clerk III and received comparable salaries graded commensurately to their titles. Under the CAJ’s Plan, court clerk titles at the appellate levels were reclassified and allocated salary grades as follows: Court Clerk I was reclassified to Appellate Court Clerk (JG-24), Court Clerk II to Senior Appellate Court Clerk (JG-26), and Court Clerk III to Principal Appellate Court Clerk (JG-28). Trial court titles were classified and allocated grades as follows: Court Clerk I was transferred to Senior Court Clerk (JG-21), Court Clerk II to Associate Court Clerk (JG-23) and Court Clerk III to Principal Court Clerk (JG-26).
In 1982 and 1983, members of the petitioner New York State Court Clerks Association[3] (Clerks) and other clerks employed by the court system, appealed their classifications and salary allocations to the CAJ (see, 22 NYCRR 25.41 [a]). He denied the appeals relying in part on the fact that historically appellate court clerks had received higher pay than trial clerks because of the "difference in the criticality of function” between the two groups. On appeal, the Board determined *473 that trial court clerks and appellate court clerks were engaged in basically the same kind of work with equivalent levels of difficulty and responsibility and that any differences between the titles were insignificant. Thus it held that under the State policy requiring equal pay for equal work (see, Civil Service Law § 115), there should be no difference in the clerks’ salary grades. To equalize the positions, petitioner had sought to have the salaries of the 1,133 affected trial clerks raised to the same level as the 18 affected appellate clerks. The Board found no evidence that the trial clerks were underpaid, however, concluding instead that the appellate clerk salaries were too high and ordered that appellate court clerks be allocated to the lower salary grades occupied by the trial clerks. On a separate issue, petitioners challenged the inclusion of Supreme Court trial part duties in the title for Senior Court Clerk. The Board rejected the claim and held that the CAJ’s conversion of Clerk I to the Senior Court Clerk title was valid.
Following the issuance of the Board’s decisions, four article 78 proceedings challenging various aspects of the administrative orders were commenced and subsequently consolidated into this proceeding. Supreme Court confirmed the Board’s finding that the duties and responsibilities of clerks working in trial courts are basically equivalent to those of appellate court clerks. It granted the petitions in part, however, by (1) annulling the Board’s direction to reduce the appellate clerk’s salary grades, (2) directing that trial court clerks be allocated to the appellate clerks’ salary level and (3) ordering that the duty of acting as Part Clerk in Supreme Court be deleted from the Senior Court Clerk title and placed in the Associate Court Clerk title. It remanded the matter to the CAJ for "appropriate action not inconsistent with the provisions of this judgment and the decision of the court”. The Appellate Division affirmed, without opinion, and we granted the CAJ and the Board leave to appeal.
The Board found that although trial and appellate courts process cases differently, clerks of both courts perform similar court clerical work: they examine and review documents filed with the court, prepare orders and documents, prepare and call the calendar and answer inquiries. A comparison of the relevant title standards confirms the Board’s finding that the clerks’ duties and responsibilities in performing those tasks are sufficiently similar so that different classifications were not justified and created inequities in the Plan (see, Report of Office of Court Administration, May 28, 1979 [Plan’s objectives *474 include "redressing] equitably the disparities in salaries paid for similar jobs in different locations”]). Thus, the Board’s determination, which was based on the statutory mandate that nonjudicial employees be classified according to the duties required to be performed and the responsibility of the position, is supported by evidence in the record and is rational (see, Judiciary Law § 39 [8] [a]).
There was also a rational basis for its determination that inclusion of Supreme Court trial part duties in the work of Senior Court Clerks was appropriate. The 1979 Classification Plan reclassified titles that were in existence at that time. Although prior title specifications for court clerk positions in New York City had been court specific, the Court Clerk titles promulgated in 1975, which were reclassified under the 1979 Plan, simply authorized Court Clerk I’s "to act in the courtroom”. Under the present Plan the CAJ converted the title of Court Clerk I to Senior Court Clerk and included within the title specifications the duty of serving as a "Supreme Court” Part Clerk. In upholding the CAJ’s classification the Board relied upon its earlier decision in Matter of Mennella (see, Matter of Mennella v Office of Ct. Admin., 116 AD2d 649) which held that the 1975 title specifications for Court Clerk I and Court Clerk II in effect prior to the adoption of the Plan corresponded to the title standards for the new titles of Senior Court Clerk and Associate Court Clerk, respectively. The Board also noted that the conversion was appropriate, notwithstanding the practice in New York City of assigning Court Clerks I to lower courts and Court Clerks II to Supreme Court, because there was no indication that the Part Clerk assignment in Supreme Court was significantly more difficult or carried greater responsibility than an assignment in the Criminal or Civil Courts in New York City.
As noted by the Board, the prior title standard for Court Clerk I, "to act in the courtroom”,[4] corresponded to the title standards for the new title of Senior Court Clerk and, therefore, the reclassification was not "unjust and inequitable” (see, Mandle v Brown, 5 NY2d 51, 65). Although the administrative practice in New York City prior to the 1979 Plan was to limit the assignment of Court Clerk I’s to trial parts in courts other than Supreme Court, there is no legal requirement that this *475 administrative assignment practice be continued under the present Plan. Although this classification may have the effect of limiting certain job promotional opportunities, changes in the classification of positions in public employment need not maintain the status quo in promotional opportunities (see, Matter of Pon v McCoy, 38 AD2d 608, 609, affd 30 NY2d 902; Marino v Evans, 87 AD2d 623, 624).
Accordingly, the Board’s decision that trial and appellate court clerks should be allocated to the same salary grade and that Supreme Court trial part duties were properly included in the title of Senior Court Clerk was rational and should be reinstated.
IV
Relief
The Board and the CAJ contend that the CAJ possesses the exclusive authority to reclassify positions and allocate salary grades under the Classification Plan and that the courts in the Clerks’ proceeding improperly usurped that authority by directing that trial court clerks be allocated to the appellate clerks’ salary level instead of remanding the reclassification and reallocation issues to the CAJ. The Clerks maintain that the courts’ order was proper because the courts are empowered to direct agency action where there is only one option left open to the agency. Here, they assert the CAJ’s authority was not usurped because there was no discretionary function remaining for him to perform; the salary grades of the trial level clerks must be upgraded to the same level as appellate court clerks.
In Matter of Bellacosa v Classification Review Bd. (72 NY2d 383, 391, 392, supra), we noted that the authority to adopt and revise classifications and allocations constitutes a "core administrative power” delegated exclusively to the CAJ and that "under the existing regulatory scheme, only the CAJ, or a designated representative over whom the CAJ retains supervisory authority, may exercise that power.” Consequently, we held that the Board’s authority to "reverse or modify” classification determinations only permitted it "to invalidate * * * or to modify the challenged classification in a way that does not impinge upon the CAJ’s exclusive classification authority.” (Matter of Bellacosa v Classification Review Bd., 72 NY2d 383, 392-393, supra.)
*476 The same reasoning applies to this case. The courts have the power to reverse or modify a particular classification of the Board pursuant to CPLR article 78 if it is "wholly arbitrary or without any rational basis” (Cove v Sise, 71 NY2d 910, 912, supra). However, they exercise a review function only and may not encroach on the discretion delegated exclusively to the CAJ to classify nonjudicial employees in the Unified Court System (see, NY Const, art VI, § 28 [b]; Judiciary Law § 212 [1]). As Matter of Bellacosa emphasized, "[s]uch a result would seriously undercut the CAJ’s authority and would threaten the orderly administration of the court system.” (72 NY2d, at 391.) Only the CAJ possesses the expertise required to determine how new classifications and salary grades will impact on the budget and structure of the Unified Court System and his discretionary authority in these matters may not be usurped (see, Matter of Ahsaf v Nyquist, 37 NY2d 182, 186; Matter of Berger v Walsh, 291 NY 220, 223). Although the courts below were empowered to determine that awarding the two classes of titles of clerks the same salary was rational, they were thereafter required to remand the matter to the CAJ for appropriate action (see, Matter of Bellacosa v Classification Review Bd., 72 NY2d 383, 393, supra).
Moreover, the CAJ is not limited to the remedy of upgrading the salary grades of trial court clerks to the same level as appellate court clerks. Although the State policy of providing equal pay for equal work embodied in Civil Service Law § 115 applies to the Unified Court System (see, Judiciary Law § 211 [1] [d]) and requires that the salary grades of trial and appellate court clerks be equivalent, nothing prohibits the reallocation of the salaries of the two positions to a grade lower than that presently held by appellate clerks. Judiciary Law § 39 (6) (a) requires only that nonjudicial employees be "entitled to the salaries * * * to which they were entitled pursuant to any law or contract in effect immediately prior to the effective date [of the Plan]” (see also, Judiciary Law § 39 [8] [a]). Therefore, incumbents in the title must be placed at an increment step within the allocated salary grade at the salary they had been receiving prior to the Plan (Judiciary Law § 39 [8] [b]; see, Matter of Tolub v Evans, 58 NY2d 1, 4-6, appeal dismissed 460 US 1076; NY Const, art VI, § 35 [l] ["the non-judicial personnel of the courts affected by this article in office on the effective date of this article shall, to the extent practicable, be continued without diminution of salaries”]). *477 However, they need not be allocated the same salary grade which they held prior to the Plan. Thus, the matter must be remanded to the CAJ so he may exercise his discretion to determine the appropriate equivalent salary grade for trial and appellate court clerks.
Accordingly, in Matter of Association of Secretaries to Justices v Office of Ct. Admin., the order should be modified, without costs, in accordance with this opinion and as so modified, affirmed. In Matter of New York State Ct. Clerks’ Assn. v Hirnber, the order should be reversed, without costs, and the matter remitted to Supreme Court, New York County, with directions to remand to the Chief Administrator for further proceedings in accordance with this opinion.
Judges Kaye, Alexander, Titone and Hancock, Jr., concur; Chief Judge Wachtler and Judge Bellacosa taking no part.
In Matter of Association of Secretaries to Justices v Office of Ct. Admin.: Order modified, etc.
In Matter of New York State Ct. Clerks Assn. v Hirnber: Order reversed, etc.

. The incumbent is either the Chief Administrator of the Courts or, if a judicial officer, the Chief Administrative Judge of the Courts (Judiciary Law § 210 [3]). When these actions were commenced, the Chief Administrator was a judicial officer and for convenience CAJ is used to describe him.

. The association is a voluntary organization which represents the confidential executive secretaries employed by Justices of the Supreme and Surrogate’s Courts throughout the City of New York. Its members, all of whom were locally paid prior to April 1, 1977, were reclassified to the new trial-level title of either Senior Secretary to Judge or Principal Secretary to Judge under the Plan.

. The association is the certified representative for persons in the court clerk titles employed in the Supreme Court and Surrogate’s Courts within New York City.

. Contrary to the contention of the Clerks, no hearing was required prior to the adoption of the 1975 title specifications (see, Corkum v Bartlett, 46 NY2d 424, 431).