*204 OPINION OF THE COURT
Gerard M. Weisberg, J.
This is a motion to sever and certify a subclass of claimants, to deem the notice of intention to file a claim to be timely as to this subclass and to enjoin a vote by the New York State Court Clerks Association (NYSCCA) on a proposed settlement of the underlying action.
This claim concerns the salary received by trial court clerks in the Unified Court System between April 1, 1977 and February 15, 1991. Prior to April 1, 1977, trial court clerks were employed by local governmental units while the appellate court clerks by the State. Both, however, received comparable compensation. In 1976, the Legislature enacted the Unified Court Budget Act (L 1976, ch 966) which, effective April 1, 1977, transferred approximately 8,500 locally paid court employees to the State payroll. In addition, it authorized the Administrative Board of the Judicial Conference to adopt a classification structure for all nonjudicial officers and employees of the State based on their duties. Pursuant to constitutional amendment, the Administrative Board was abolished and replaced in November 1977 by the Chief Administrator of the Courts (Chief Administrator). Appeals of the rulings of the Chief Administrator went to a Classification Review Board (Review Board). (See, Matter of Association of Secretaries to Justices v Office of Ct. Admin., 75 NY2d 460.)
Thereafter, the Chief Administrator classified the trial court clerks in a lower paying grade than the appellate court clerks. The NYSCCA appealed to the Review Board. That tribunal agreed that the trial clerks and appellate clerks did basically the same work with an equivalent level of difficulty and responsibility. Therefore, under Civil Service Law § 115 (equal pay for equal work), the Review Board ruled that the salaries should be the same. However, ruling further, that agency found that rather than the court clerks being underpaid, it was the appellate clerks who were being overpaid. The Review Board therefore ordered the Chief Administrator to lower the appellate clerks’ grade. (See, supra, 75 NY2d, at 472-473.)
The NYSCCA then challenged this order in a CPLR article 78 proceeding. Supreme Court confirmed the finding that the trial and appellate clerks’ responsibilities were basically equivalent. (Matter of New York State Ct. Clerks Assn. v Himber, Sup Ct, NY County, Jan. 27, 1988.) Justice Kristin Booth Glen annulled the Review Board’s direction to lower *205 the appellate court clerks’ salary grade and directed that the trial clerks’ be raised to the appellate court clerks’ level. The Appellate Division, First Department, affirmed without opinion. (Matter of New York State Ct. Clerks Assn. v Himber, 150 AD2d 990.) The Court of Appeals reversed. (75 NY2d 460, supra.) That tribunal agreed there existed a rational basis for the Review Board’s ruling that trial and appellate court clerks should be allocated to the same salary grade. It held, however, that neither the Review Board nor the courts had the authority to make that allocation, such authority residing in the Chief Administrator and therefore remanded that issue to him. By letter dated February 15, 1991, the Chief Administrator notified the union that the appellate clerks’ grade had been lowered to that of the trial clerks.
By a claim filed and served on August 14, 1991, the above-named claimants commenced a class action in this court.[1] The proposed class is all those individuals who are now employed as court clerks or who have been employed as court clerks in the Unified Court System during the period from April 1, 1977 to February 15, 1991. It is asserted that this class contains over 1,800 individuals. The claim seeks damages as to all class members as follows: the difference between the salary actually received and the salary of the appellate court clerks between April 1, 1977 or such individual’s hiring date whichever is later, and February 15, 1991.[2] The claim asserts that it accrued on February 15, 1991.
The claimants then moved to certify this class and the defendants cross-moved to dismiss the claim. Among other grounds, it was argued that the claim is late and that a class action will not lie in the Court of Claims. During the pendency of these motions, settlement discussions were held resulting in a proposed resolution.
Although this action seeks damages for lost wages for each class member who worked during the period from April 1, 1977 to February 15, 1991 based on the actual time he or she *206 worked, the proposed settlement, in lieu of damages, would have raised the salary, effective June 30, 1994, of each employee who had served continuously in the Unified Court System in a position represented by the union since June 30, 1989 and who had continued to hold a position represented by the union on the effective date, by $1,750. On June 30, 1995, such employees would have their base annual salary increased by an additional $1,750. Thus, those who had already retired would receive nothing under the settlement despite the fact that they may have been employed for all of the April 1, 1977 to February 15, 1991 period.
Prior to the vote on this settlement by the voting members of the union, one member sought by an order to show cause to sever and certify a subclass of approximately 30 named and 70 unnamed individuals who, although employed during some or all of the April 1, 1977 to February 15, 1991 period, commenced their employment prior to April 1, 1977. In addition, the motion sought a ruling that the notice of intention would be deemed timely as to such subclass and also sought ex parte to enjoin the vote by NYSCCA on the settlement. I refused to issue an injunction, the vote was held and the membership turned down the proposal. Settlement talks then recommenced. The motion to certify the main class and the cross motion to dismiss have been held in abeyance pending such discussions. This motion, however, has been submitted. The problem with this procedure is: how can I sever and certify a subclass when I have not certified a main class? From what would I be severing the subclass? In addition, were I to certify a subclass now, I would necessarily be passing on issues, such as the appropriateness of a class action proceeding in this court, which the parties have requested me to hold in abeyance. I must therefore deny the motion if only for those reasons. However, inasmuch as there is a great likelihood that all of these motions will be submitted to me at some time, I shall address the merits for the guidance of the parties.
Although not approved by the union membership,[3] it was the proposed settlement and the continuing possibility of other settlements along the same or similar lines which prompted this motion. As indicated above, retirees would receive nothing under this proposed settlement. Based *207 thereon, the proposed subclass argues that a conflict of interest now exists between it and the main class represented by the union. The union responds that it is the representative of all of the members of the union and the class, and that no conflict exists between the proposed subclass and the main class. Moreover, the union suggests that it would he inappropriate, after allowing the union to commence this action on its behalf, and to negotiate a settlement, to let a dissident group sever itself and thereby undermine its authority.
The problem with the union’s position is that while this may have been handled as a labor dispute and subjected to collective bargaining, assuming this class action is timely and valid, each member has a cause of action against the State which may not be bargained away without such individual’s consent. Focusing solely on the retirees, on this record, it appears they pay no dues to the union, have no vote in determining its officers, and no vote on the contents of any settlement.[4] Thus, it appears that even before the inception of this lawsuit, there was a conflict of interest between the retirees and the union. It is not surprising, therefore, that the settlement proposes to pay them nothing.
The union responds by saying the retirees received additional compensation in the past to remedy the situation. If true, it only confirms that they have been treated differently all along. If treated differently in the past and to be treated differently in the future, does it not follow they should have different representation now?
Lastly, as to the timing of this motion, the Court of Appeals has held that where by virtue of a proposed settlement, a conflict of interest arises, a class member with a cause of action for damages has a constitutional right to either opt-out of the class or to be put in a subclass (see, Matter of Colt Indus. Shareholder Litig. v Colt Indus., 77 NY2d 185, 198, supra). Here, assuming the union’s asserted accrual date for this action, it would appear to be too late for an opting-out class member to bring his or her own action now. (Court of Claims Act § 10 [4]; but cf, Court of Claims Act § 10 [6].) A subclass is therefore constitutionally mandated.
The above comments, however, describe the situation of the *208 retirees. The proposed subclass would be all clerks, retired or not, who commenced their employment prior to April 1, 1977 and were employed after that date. The reason for this definition has not been clearly set forth. It is my supposition that most or all of the currently employed members of this proposed subclass are near retirement or other severance from the Unified Court System and therefore expect to get little from a settlement along the lines discussed.
I will not sever a subclass along these lines. As long as a class member is employed as a trial clerk, his or her rights are not in conflict, in any quantifiable way, with the rest of the main class. The possibility that he or she may retire or leave the Unified Court System at some yet unspecified date is too slender a thread upon which to construct a subclass. With a class of current clerks and a class of retirees, all similarly situated members would have their rights protected.
In conclusion, I am denying this motion both on the merits, in terms of the construction of the proposed subclass, and as being premature in light of the reservation of several related, underlying issues. However, should there be no settlement, or should a settlement be proposed to me that treats retirees and current clerks differently, I will not try or approve, as the case may be, such without the creation of a subclass of retirees.

. The document actually served and filed was entitled "Notice of Intention to File Claim and Verified Claim.” Pursuant to a stipulation dated December 20,1991, counsel for the parties deemed this to be a claim.

. It appears to me that there is an inconsistency between the proposed class to be certified and the damages sought in that damages are only sought for those individuals who were employed as court clerks during the period from April 1, 1977 to February 15, 1991. However, the proposed class would appear to include individuals, who though employed as court clerks now, were not so employed during the disputed time.

. Mr. BertoJdi, the president of NYSCCA, represented in court that retired clerks did not vote on this proposed settlement. Whether there existed nonunion clerks and whether they were allowed to vote was not addressed.

. Of course, they would be entitled to notice and an opportunity to object before any proposed settlement is approved by the court. (CPLR 908; Matter of Colt Indus. Shareholder Litig. v Colt Indus., 155 AD2d 154, affd 77 NY2d 185.)