OPINION OF THE COURT
Richard B. Lowe, III, J.
This is a CPLR article 78 proceeding in which the petitioner seeks a judgment declaring that (1) respondent’s February 15, 1991 determination that the current salary grades for the trial court clerk titles are the appropriate salary grades for those titles is arbitrary, capricious and contrary to the law; (2) respondent’s treatment of incumbents in the appellate court clerk titles violates the State policy of “equal pay for equal work,” and equal protection principles under the State and Federal Constitutions; and (3) the February 15, 1991 directive violates Office of Court Administration (OCA) established policy and practice regarding earmarking titles and is arbitrary and capricious and contrary to law.
The court notes that the decision on the pending matter was held in abeyance while the parties vigorously pursued settlement negotiations. For approximately two years the parties participated in ongoing settlement negotiations and informed the court that a settlement would be reached. On September 23, 1998 the parties advised the court that settlement was unlikely. Thereafter, new counsel was given the opportunity to argue the underlying issues. At that time the court advised the parties that if a settlement was not reached in the near future the court would render its decision. To date, the court has not been advised of a settlement. As such, the court renders its decision as follows:
Historical and Procedural Background
Effective April 1, 1977, the administration of the State court system was unified pursuant to the Unified Court Budget Act of 1976 (L 1976, ch 966, as amended, codified as Judiciary Law § 39), and all judicial and nonjudicial personnel became State employees. All court clerks previously paid by the localities were transferred to the payroll of the State of New York. Appellate court clerks had always been State employees, while trial court clerks were employees of the localities in which they worked. Although their salaries were funded by separate *727 governmental entities, both trial court clerks and appellate court clerks were classified as Court Clerk I, Court Clerk II and Court Clerk III. The trial level court clerk titles were ungraded for salary purposes, and incumbents were paid at a rate of compensation determined according to the varied fiscal constraints of the localities. Prior to 1977, the salaries of the State-paid appellate court clerk title series were graded as follows: Court Clerk I (JG 24), Court Clerk II (JG 26), and Court Clerk III (JG 28).
Pursuant to section 39 (8) (a) of the Judiciary Law, the Chief Administrative Judge (CAJ) conducted a study in 1979 to establish a new classification structure for the Unified Court System. The 1979 Classification Structure for Non-Judicial Positions in the Unified Court System, hereinafter referred to as the 1979 Classification Plan, provided new titles for all nonjudicial employees in the classified service of the State, including both the State-paid and the former locally paid employees. Pursuant to the powers granted by the Legislature to the Administrative Board of the Judicial Conference (whose powers now have been assumed by the Chief Judge of the Court of Appeals) (NY Const, art VI, § 28), the Administrative Board determined the salary grades of the former locally paid nonjudicial employees, retroactive to April 1, 1977, and placed them in the previously existing salary grade structure of Judiciary Law former § 219 (now § 37). Under the 1979 Classification Plan, the uniform classification of all previously State-paid employees and locally paid employees was accomplished by an exhaustive evaluation of (1) the duties and responsibilities of all positions, (2) the knowledge, skills, and abilities required, and (3) the volume of work in the court or court-related agency in which the position existed. The compensation levels were set based upon these factors.
Based upon the findings of the study conducted for the 1979 Classification Plan, the CAJ promulgated a Classification Plan, with the following new job titles and salary grades for the former trial court clerk titles: Court Clerk I was classified to Senior Court Clerk (JG 21), Court Clerk II to Associate Court Clerk (JG 23), and Court Clerk III to Principal Court Clerk (JG 26). The court clerks at the appellate level were reclassified as follows: Court Clerk I was reclassified to Appellate Court Clerk (JG 24), Court Clerk II to Senior Appellate Court Clerk (JG 26), and Court Clerk III to Principal Appellate Court Clerk (JG 28). Historically, where the trial court clerks had previously received comparable salaries with that of the appellate *728 court clerks, under the Classification Plan, the trial court clerks were allocated lower salary grades than that of the appellate court clerks.
The trial court clerks appealed their classification and salary allocation to the CAJ pursuant to 22 NYCRR 25.41 (a). The CAJ denied their appeal on the basis that the difference in salaries was proper because of the “difference in the criticality of function” between the two groups. An appeal was then taken to the Classification Review Board (CRB), an independent three-member board of classification experts from outside the judicial branch. The CRB was established concurrent with the Classification Plan to review the classification determination of the CAJ. If an employee was dissatisfied with the CAJ’s classification review, then an appeal could be taken to the CRB which is authorized to reverse or modify a classification of the CAJ found to be “unjust and inequitable”. (22 NYCRR 25.41 [a], [b].) The CRB determinations were administrative orders subject to judicial review in an article 78 proceeding and its determinations would not be disturbed by the courts unless they were arbitrary or irrational. (Cove v Sise, 71 NY2d 910, 912 [1988].)
In their appeal to the CRB, the trial court clerks argued that they should have been allocated higher salary grades because the trial court clerks had been receiving higher compensation prior to the implementation of the Classification Plan. Alternatively, the trial court clerks argued that they should have been allocated to the same grades as corresponding appellate court clerk titles because the duties and responsibilities under both titles are similar. In response the CAJ contended that while trial and appellate court clerks performed some similar duties, there were significant dissimilar duties performed, and thus salary differentials were permissible. Neither the appellate court clerks, nor their representatives were parties to the CRB proceedings.
In Administrative Order No. 86-6, the CRB determined that (1) the trial court clerks and the appellate court clerks had essentially identical duties and responsibilities; (2) the criticality of function was no basis for the difference between the two salaries; (3) the salaries of trial court clerks were not too low; and (4) the trial level court clerks were not entitled to grade allocations which encompassed the salary ranges and maximum salaries formerly applicable under the locally adopted pay schedule. Upon finding that the trial and appellate court clerks should be allocated to the same grades, the CRB directed that the CAJ reduce the grades of the appellate court clerks by:
*729 “[E]armark[ing] all positions of the Appellate Court Clerk, Senior Appellate Clerk and Principal Appellate Court Clerk. Upon the occurrence of a vacancy in any such position, if the position continues to have the same duties and responsibilities, it shall be reduced in grade as follows:
“Appellate Court Clerk, from grade JG-24 to grade JG-21
“Senior Appellate Court Clerk, from grade JG-26 to grade JG-23
“Principal Appellate Court Clerk, from grade JG-28 to grade JG-26.”
The CAJ and the Clerks Association, acting on behalf of the trial court clerks, challenged the CRB’s Administrative Order No. 86-6 in an article 78 proceeding. The appellate court clerks also challenged the CRB’s unilateral downgrading of their positions, without having been a party joined in the CRB’s administrative review. The trial clerks argued, inter alia, that they should be allocated to the same salary grades as their counterparts at the appellate level in view of the finding of equality of work. The CAJ challenged that portion of the CRB’s order which directed OCA to earmark appellate court clerk positions to downgrade their salary allocations upon the occurrence of a vacancy.
By decision dated January 27, 1988, the Supreme Court, New York County, affirmed in part and annulled in part CRB Administrative Order No. 86-6. The court agreed with the CRB’s finding that the duties and responsibilities of the trial court clerks were essentially equivalent to those of the appellate clerks. However, the court annulled the CRB determination finding that there was no rational basis for reducing the appellate clerks’ salary grades. Instead the Supreme Court ordered that the trial court clerks be allocated to the higher appellate clerks’ salary level. The Appellate Division affirmed, without opinion, the judgment of the Supreme Court (Matter of New York State Ct. Clerks Assn. v Himber, 150 AD2d 990). The Court of Appeals granted the CRB and the CAJ leave to appeal.
By a decision dated March 27, 1990, and reported at 75 NY2d 460 (1990), the Court of Appeals upheld in part and annulled in part the decisions of the lower courts. The Court of Appeals affirmed the determination that the duties and responsibilities of the trial level and appellate level court clerks were so similar that different classes were not justified. Further, the Court of Appeals found that the different classes created inequities in *730 the Classification Plan. The Court disaffirmed the directives adjusting the salary grades of court clerk titles by finding that the CRB and the Supreme Court both had improperly usurped the exclusive authority of the CAJ to allocate salary grades. The Court reasoned that while the CRB and the courts have the power to reverse or modify a particular classification of the CAJ, neither the CRB’s nor the court’s review function may “encroach on the discretion delegated exclusively to the CAJ to classify nonjudicial employees in the Unified Court System” (at 476).
Upon remanding the matter to the CAJ, the Court further found that the CAJ was not limited to the remedy of upgrading the salary grades of trial clerks and that while the State policy of equal pay for equal work applied and the salary grades of trial clerks and appellate clerks must be equivalent, “nothing prohibits the reallocation of the salaries of [appellate clerks and trial clerks] to a grade lower than that presently held by the appellate clerks.” (Supra, at 476.) The Court found that the only constraint on the CAJ was Judiciary Law § 39 (8) (a) which prescribes that incumbents receive the same salary as they had been receiving prior to the Classification Plan. The Court of Appeals then reiterated its prior ruling that Judiciary Law § 39 (8) (a) does not require that incumbents be allocated to the same salary grade equivalent to that which they held prior to the Classification Plan.
CAJ’s Actions Taken on Remand
Following the Court of Appeals decision, in March 1990, the CAJ required OCA to conduct a study of the court clerk titles for the purpose of establishing joint salary grades. The study consisted of: an analysis of the duties and responsibilities of all court clerk positions; an analysis of the relationship between and among the court clerk titles and the other court titles; a salary comparison of the trial level court clerk titles with comparable positions in the private and public sector, particularly with court clerk positions in other court systems; and consideration of the fiscal needs and concerns of the court system. As a result, the CAJ issued its 1991 directive setting forth that the existing salary grades for the trial court clerk titles were the appropriate salary grades for those titles. Since the Court of Appeals ruled that the salary grades of the appellate court clerks must be equivalent to that of the trial court clerks, the CAJ adopted and applied to the appellate court clerks the existing salary grades of the trial court clerk titles. In amending *731 the Classification Plan, the CAJ lowered the salary grades and modified the existing titles of the appellate court clerks as follows:
1979 Classification Plan 1991 Amendment Reclassifying
Appellate Court Titles Appellate Court Titles
Appellate Court Clerks (JG 24) Senior Appellate
Court Clerks (JG 21)
Senior Appellate Court Clerks (JG 26)
Associate Appellate Court Clerks (JG 23)
Principal Appellate Principal Appellate
Court Clerks (JG 28) Court Clerks (JG 26)
Regarding the incumbent appellate court clerks, who had been allocated the same salary grade under the 1979 Classification Plan as they had historically received prior to the Plan, the CAJ grandfathered-in the incumbent appellate court clerks to their existing titles and earmarked those titles in order to continue the incumbents at their present salaries. Once those positions became vacant, the earmarked titles would be refilled in the new title at the lower salary grade.
Present Article 78
Petitioner challenges the CAJ’s 1991 determination (1) that confirmed the salary allocation of the trial court clerks; (2) that reduced the salary grade allocation of future appellate court clerk hires; and (3) that grandfathered-in the incumbent appellate court clerks into earmarked titles. Petitioner contends that the CAJ failed to conduct a thorough study of the statutory factors to determine salary grades for the court clerk title series prior to its 1991 determination. Petitioner further contends that the CAJ acted arbitrarily and capriciously by grandfathering-in the incumbent appellate clerks into earmarked titles. Petitioner argues that the grandfathering of incumbent appellate court clerks is merely an attempt by OCA to continue the disparity between salaries of appellate and trial court clerks. Petitioner asserts that such action not only contravenes the State policy of equal pay for equal work, but also violates State and Federal equal protection laws.
*732 In response, the CAJ argues that the administrative determination designating the existing salary grades of the trial court clerk titles has a rational basis. Respondent also contends that the grandfathering-in of the incumbent appellate court clerks at their existing salaries is not arbitrary or irrational and does not violate the trial court clerks’ right to equal protection.
Analysis
At the outset, this court notes that in exercising its review function it will not encroach upon the discretion delegated exclusively to the CAJ to determine how salary grades will impact on the fiscal budget of the Unified Court System. To do so, might force fiscal constraints to their limits. Further, this court notes that the burden of showing that the CAJ’s findings are wholly arbitrary or without any rational basis is a difficult task. Absent such a finding the CAJ’s determination will not be disturbed. The responsibility of balancing the budget, in and of itself, suggests a rational basis for the determinations of the CAJ.
Judiciary Law § 39 (8) (a) authorized the Administrative Board of the Judicial Conference to “adopt a classification structure for all non-judicial officers and employees * * * of the state of New York” and required that their positions be classified according to “duties required to be performed in title * * * responsibilities of the position and the volume of work in the court or court-related agency in which the position exists.” (See, Matter of New York State Ct. Clerks Assn. v Himber, 75 NY2d 460, 469 [1990], supra.) “In such matters the administrative official or agency is assumed to possess not only a special proficiency and experience which are not necessarily always to be found in the courts, but also an alertness to and a comprehension of the complexity and sensitiveness of personnel administration in continuing intraorganizational relationships”. (Matter of Ahsaf v Nyquist, 37 NY2d 182, 184-185 [1975]; Matter of Association of Secretaries to Justices of Supreme & Surrogate’s Cts. v Office of Ct. Admin., 75 NY2d 460, 476, supra.) It is well established that a particular classification of the CAJ will be reversed or modified if it is “wholly arbitrary or without any rational basis”. (Cove v Sise, 71 NY2d 910, 912 [1988], supra.) Respondent’s 1991 reallocation of the trial and appellate court clerk titles to the existing salary grade of trial court clerk titles was rational and fair in that it provided an adequate remedy to the issue of “equal pay for *733 equal work”. The court notes its fairness for several reasons. First, it was rationally based upon the 1991 salary survey of similar positions held in other court systems. Second, it was supported by an extensive evaluation of the trial court clerk titles and existing salary grades in correlation with other titles within the Unified Court System. (See, Matter of New York State Supreme Ct. Officers Assn. v Crosson, 150 Misc 2d 964, 968 [Sup Ct, Orange County 1991].)
Third, over-all fiscal constraints support rationality. Where there exists significant reasons of fiscal concern and the proper administration of the courts, rationality may be concluded. (Matter of Tolub v Evans, 58 NY2d 1, 10 [1982].)
Lastly, the independent expert’s determination of the CRB supported a finding that the trial court clerk salaries were not too low. Facts found appropriate by an independent fact finder may be used to conclude rationality. (See, Matter of New York State Supreme Ct. Officers Assn. v Crosson, 150 Misc 2d 964, 969, supra.)
Petitioner’s contention that the CAJ’s 1991 salary survey of various court clerks in other jurisdictions was skewed and, therefore, unreliable does little to negate the entire decision-making administrative process by which the 1991 reclassification was made. The adoption of classification plans is purely an “administrative task” and not the formation of policy. Thus, contrary to petitioner’s assertions, the CAJ’s 1991 evaluation and reclassification cannot be found arbitrary because the CAJ did not seek the same involvement or participation by the Administrative Judges, the fiscal and judiciary committees of the Legislature, and employee organizations, as with the adoption of the 1979 Classification Plan. There is no requirement that the administrative assignment practice be continued exactly the same as in the past. Likewise, only a few external court systems were invited to respond to the 1991 survey as compared to the approximately 41 State, Federal and private institutions which responded to the 1979 Classification Plan, and the limited response to the 1991 salary survey has little effect on the reliability of the information received. Clearly, the 1979 Classification Plan which undertook to establish title standards and salary allocations for all nonjudicial employees in New York’s Unified Court System required a much broader survey than a survey intended to illicit salary information for a single title series. The same methodology, used in 1979, for developing job classifications was used by the CAJ in 1991 by comparing the job of trial court clerks with other jobs within and without the court system.
*734 While this court shares some of petitioner’s concerns regarding the exclusion of the title standards of the Senior Court Clerk position and all' appellate court clerk titles, these omissions from the survey do not demonstrate that the CAJ’s 1991 reclassification was totally without a rational basis. The CAJ did not and could not rely exclusively upon the external 1991 survey of court systems in other jurisdictions, which are not so similarly situated, in order to ensure that the uniqüe needs of New York’s unified courts have been adequately met.
In support of the 1991 determination, the CAJ rationally evaluated several factors which indicated that the existing trial court clerk salary grades should remain unchanged. To raise or lower the salary grade allocation of Senior and Associate Trial Court Clerks would certainly have a ripple effect upon the salary grades of the supervisory titles of Deputy Chief Clerk and the comparable titles of Court Officer. Undisputably, the retroactive raising of the salary grades of the trial court clerk title series would have an extreme budgetary impact on the Unified Court System. The CAJ, as the administrator charged with the responsibility of managing the court’s budget, would be in neglect of his or her duties if the enormous fiscal implications of raising the salary grades of the Senior and Associate Trial Court Clerks were not considered. The ability of the Unified Court System to meet such a burden is a matter that only the CAJ can determine. Also, the CAJ relied upon the CRB determination, which was unmodified by the Court of Appeals decision in Court Clerks Assn. v Himber (supra). The independent CRB, composed of classification experts, made the fact-finding determination that the trial court clerk salary grades were not too low. Hence, in light of the reasons explained above, the CAJ’s 1991 reclassification was not arbitrary or capricious and was rationally based.
Petitioner’s equal protection challenge of the CAJ’s decision to earmark and grandfather-in incumbents in the appellate level court clerk titles too must fail. There is no doubt that the nature and quantity of work performed by trial court clerks is equal to, if not greater than that of the appellate court clerks. Indeed, trial court clerks must be allocated to the same salary grades as the appellate court clerks, since the Court of Appeals found that both titles encompass essentially the same duties and responsibilities. The CAJ downgraded the former salary grades of appellate court clerks so that when the earmarked appellate court clerk positions become vacant, the salary grade allocation will be equivalent to the existing salary grades of *735 trial court clerks. This process clearly fosters the goal of equal protection under the law.
This court finds that the difference in the salary grade allocations of incumbent appellate court clerks clearly furthers the State’s legitimate governmental objective of guaranteeing that all nonjudicial court employees receive the same salaries as those received in April 1977, the retroactive effective date of the 1979 Classification Plan. (Judiciary Law §39 [6] [a]; see, Matter of New York State Ct. Clerks Assn. v Himber, 75 NY2d 460, 476, supra; Matter of Tolub v Evans, 58 NY2d 1, supra; Matter of New York State Supreme Ct. Officers Assn. v Crosson, 150 Misc 2d 964, 969, supra; compare, Weissman v Evans, 56 NY2d 458.) The trial court clerks were accorded similar treatment given that, under Judiciary Law § 39 (6) (a), every trial court clerk was placed at an incremental step equivalent to the salaries they received prior to the 1979 Classification Plan.* Earmarking the incumbent appellate court clerk positions was a rational device by which the CAJ could insure that incumbent appellate court clerks would retain their former salaries, and at the same time carry out the Court of Appeals ruling to eliminate the unfair disparity between trial level and appellate level court clerks. Finally, thus far, no evidence has been submitted in support of petitioner’s contention that this remedial measure is often sidestepped by increasing the salary of appellate court clerks soon after he or she is hired. The hiring courts cannot utilize such practices in order to create their own remedy, which contravenes the Court of Appeals decision in Court Clerks Assn. v Himber (supra).
Accordingly, it is ordered that the application of petitioner is denied and the petition is dismissed.

 The Court of Appeals did not construe Judiciary Law § (6) (a) to entitle former locally paid employees to allocation of the same salary grade which they held prior to the Classification Plan. (See, Matter of Tolub v Evans, 58 NY2d 1, 9, supra; Matter of Evans v Newman, 71 AD2d 240, 247.)