OPINION OF THE COURT
Jasen, J.
The issue presented by this appeal is whether the various provisions of the Judiciary Law which provide the method of computing salaries for law assistants serving in the Unified Court System violate the petitioners’ right to equal protection of the law.
Petitioners are law assistants to Justices and Judges of the Supreme Court and the Surrogate’s Court in the City of New York. Prior to April 1, 1977, they were paid by the city pursuant to the city’s managerial and executive pay plan. As of April 1,1977, the responsibility for petitioners’ salaries was assumed by the State pursuant to the Unified Court Budget Act of 1976. (Judiciary Law, § 39, L 1976, ch 966, § 2, as amd by L 1977, ch 32, § 9.)
Section 39 (subd 8, par [a]) of the Judiciary Law authorized the Administrative Board of the Judicial Conference to “adopt a classification structure for all non-judicial officers and employees who become employees of the state of New York pursuant to this section”. The statute further specified that the classifications should be in accordance with the “duties required to be performed” and that a salary grade should be designated for each person becoming a State employee because of the unification of the courts.
Section 39 (subd 8, par [b]) of the Judiciary Law further provides that when a nonjudicial employee is allocated to a salary grade in accordance with paragraph (a) of subdivi *5 sion 8, he shall be placed “into that salary grade at the salary received by such officer or employee immediately prior to said allocation or at the minimum of that grade, whichever is higher.” The salary grade, in turn, determines the incremental step each employee covered by this statute is assigned. For the purposes of determining future increments, the number of years service was computed on the basis of the increment step determined when the employee’s prior salary was converted to the State payroll. After the initial conversion, all employees would then receive the same increment credit for each subsequent year of service.
In November of 1977, section 28 of article VI of the New York State Constitution was adopted. That provision created an Administrative Board for the Unified Court System and authorized the Chief Judge of the Court of Appeals, who was appointed Chief Judicial Officer of the Unified Court System, to appoint a Chief Administrator. Standards and administrative policies for the courts are now promulgated by these administrators with the approval of the Court of Appeals. (NY Const, art VI, § 28, subd c.)
Pursuant to that change in administration, the Chief Administrative Judge was charged with formulating a new classification plan for employees. This plan was adopted in May, 1979. The plan was designed to allocate to each court title of the Unified Court System a salary grade. All law clerks in trial level courts, whether previously paid by the State or local government, were assigned a grade on the basis of the number of years they had been admitted to the Bar.
Salary assignments within each grade were computed pursuant to the dictates of subdivision 4 of section 37 and section 39 (subd 8, par [b]) of the Judiciary Law. Those clerks who had previously been State employees were assigned a salary grade according to the number of years they had been admitted to the Bar and an increment step within that grade based on the incremental step they had previously attained in State service. (Judiciary Law, § 37, subd 4, par [a].) Law clerks who previously were paid by local governments were similarly assigned a salary grade *6 on the basis of the number of years they had been admitted to the Bar. Their incremental step, however, was determined pursuant to the mandates of section 39 (subd 8, par [b]) of the Judiciary Law. This statute requires that they be assigned to the minimum salary within the proper grade unless that salary was below the salary they had been earning. In that case, they Were assigned to the incremental level which provided them with an equivalent salary. In no case did anyone incur any loss of salary. Indeed, all the petitioners were earning salaries greater than the minimum for their classification and, thus, were placed on incremental steps within their classifications so that they incurred no loss.
The effect, however, of these different means of converting the salaries was to create some disparity. An employee who was previously paid by the State at grade 31 level with five years of increments remained at that salary. An employee previously paid by the City of New York and admitted to the Bar five or more years would be assigned to grade 31, but the incremental level would be determined not by the number of years of service but by the employee’s previous city salary. Thus, that employee may have eight years of service but be placed on the third incremental level if that was sufficient to insure that his present State salary would be equivalent to or greater than that paid by the city. As a result of this disparity, petitioners receive less salary than some prior State-paid employees with the same number of years of service. Additionally, although they receive the same percentage salary increases, the actual increase they receive is smaller than that received by prior State employees because the base on which the percentage is computed is smaller.
Petitioners commenced these actions to redress this inequality. The first action is a CPLR article 78 proceeding which alleges that respondents had the authority to grant increases in salary and increments during the two-year period that the reclassification plan was being developed. Not to have done so, petitioners argue, was an arbitrary and capricious decision designed only to keep their salaries below prior State-paid employees. The second action seeks a declaratory judgment that the failure to equalize the *7 salaries of prior city-paid employees and prior State-paid employees is a violation of petitioners’ right to equal protection of the law. The two actions were consolidated by the court.
Special Term found that although disparities existed, no one group of employees was favored. Rather, whether the prior State-paid or city-paid employees were on a higher incremental level depended on whether they were hired before or after the consolidation of the court system. In considering the article 78 proceeding, Special Term concluded that the respondents had properly followed the dictates of section 39 of the Judiciary Law and their decisions could not be termed arbitrary and capricious. Concerning the declaratory judgment action, Special Term held that no violation of equal protection existed. Equal protection, the opinion states, “does not require exact equality for salaries.”
The Appellate Division unanimously affirmed, without opinion, and granted leave to appeal to this court. We now affirm.
Petitioners’ claim that respondents acted in an arbitrary and capricious manner by not, in an exercise of their discretion, granting them additional incremental salary increases is totally without merit. We agree with the courts below that respondents acted in complete accord with the dictates of section 39 of the Judiciary Law. That statute did not allow respondents any range of discretion on how incremental levels within a salary grade would be assigned. Rather, the Legislature specified that the incremental level was to be determined on the basis of the previously non-State-paid employee’s prior salary. Since respondents acted pursuant to the statutory dictates, it cannot be said that they acted in an arbitrary and capricious manner.
The primary concern raised by these actions is whether the differential which results from an application of the statutory formula constitutes a violation of petitioners’ rights to equal protection of the law. We find no reason to disturb Special Term’s determination that: “This statutorily-mandated difference in salary-grade allocation does *8 not constitute a denial of equal protection. And the fiscal constraints of the State provide a natural basis for the classification.”
In matters concerning the allocation of the public fisc, the courts do not review the Legislature’s wisdom or the propriety of their decisions. (Board of Educ. v Nyquist, 57 NY2d 27, 38-39.) Rather, the scope of review is to determine whether a rational basis exists for the classification enacted by the Legislature. Particularly in matters concerning the State’s budget, equal protection does not require that all classifications be made with mathematical precision. (Dandridge v Williams, 397 US 471, reh den 398 US 914; Lindsley v Natural Carbonic Gas Co., 220 US 61; Board of Educ. v Nyquist, supra; Walsh v Commonwealth of Mass., 618 F2d 156; Bruce v Scearce, 390 F Supp 297, affd 521 F2d 796; Eielson v Parker, 179 Conn 552; Employees Retirement System of Ala. v Oden, 369 So 2d 4 [Ala].)
In this case, the Legislature has more than a sufficient rational basis for designating different formulas to convert the salaries of prior State-paid employees and prior city-paid employees into a unified salary scale. The prior State-paid employees had been under a similar system making a direct transition regarding increments feasible. City-paid employees, on the other hand, were being paid under a completely different system. Thus, the Legislature chose to incorporate them into the State salary schedule, using their prior salary as a guide to the incremental level they should be placed at. This system assured that the cost of unification would be reasonably controlled and that no one would suffer any loss in salary. Thus, it cannot be said that the statutorily mandated system was irrational.
Similarly, a statutory scheme will not be struck as violative of equal protection merely because it creates differences in geographic areas. (McGowan v Maryland, 366 US 420, 427; Salsburg v Maryland, 346 US 545; Walsh v Commonwealth of Mass., supra, at p 158; Matter of Colt Inds. v Finance Administrator of City of N. Y., 54 NY2d 533, 544.) As long as the State had a rational basis for making such a distinction, it will pass constitutional muster under an equal protection challenge.
*9 In this case, there is an adequate factual basis for the Legislature to have prescribed different methods of converting court employees onto the unified court budget. During the period that the State was assuming the costs of these courts and merging the various previously used payroll systems, the Legislature deemed salary to be the controlling element in determining incremental steps for employees who had no prior State service. The Legislature determined that this would assure that all employees would receive credit for their prior service while not requiring individual evaluations which otherwise would have been necessary to ascertain how much of each employee’s prior service would have been in work comparable to that required in the salary grade petitioners were now serving in.
It should also be noted that the remaining subdivisions of section 39 insure that prior city employees will retain all their former fringe benefits. Those benefits are superior to ones enjoyed by prior State-paid employees. From this, it can be concluded that the Legislature considered the total cost of the unification of the court system in enacting the various transitional provisions. Even though the effect of these various provisions was to create geographic distinctions because an employee’s prior status depended on the location of his position, there was both an historical and rational reason for making the transition in salaries in the manner prescribed by the Legislature even though in doing so distinctions would be made on the basis of locality.
It is the existence of this rational basis which distinguishes this case from Weissman v Evans (56 NY2d 458). In that case, we held that the wage disparity which continued to exist between Judges in various counties subsequent to their incorporation into the Unified Court System was not supported by a rational basis and, thus, violated the Judges’ equal protection rights. The legislation controlling in that case indicated no legislative attempt to create an orderly transition of various systems, but, rather, only a continuation of an historical disparity. In fact, the evidence submitted indicated that defendant Evans, as Chief Administrative Judge, had repeatedly recommended elimination of the disparity because there was no reason *10 for continuing it. Having been presented with nothing more than tradition as the reason for continuing the wage disparity, we concluded that the statute was unconstitutional. Where significant reasons of fiscal concern and proper administration of the courts exist, we will not strike legislation merely because it creates some geographic distinctions.
We conclude that the disparity in wages created by sections 37 and 39 of the Judiciary Law have a rational basis in the Legislature’s concern for an orderly and speedy transition to a State-wide Unified Court System which was created, at least in part, to alleviate the financial burden imposed by requiring fiscally strained cities and counties to fund the court system. In assuming this additional financial responsibility for local court costs, it was reasonable for the Legislature to attempt to control the cost for the Unified Court System and make allocations in the unified court budget in a fairly impartial and expedient manner during this transitional period.
Accordingly, the order of the Appellate Division should be affirmed.