58 N.Y.2d 460 (1983)
Willard W. Cass, Jr., et al., Appellants,
v.
State of New York et al., Respondents. (And Two Other Actions.)
Court of Appeals of the State of New York.
Argued February 14, 1983.
Decided March 30, 1983.
Murray A. Gordon and Richard Imbrogno for appellants.
Robert Abrams, Attorney-General (William J. Kogan and Peter H. Schiff of counsel), for State of New York and another, respondents.
Paul A. Feigenbaum for Herbert B. Evans, respondent.
Judges JASEN, JONES, WACHTLER, MEYER and SIMONS concur in Per Curiam opinion; Judge FUCHSBERG dissents and votes to reverse in a separate opinion; Chief Judge COOKE taking no part.
*462 Per Curiam.
In these three declaratory judgment actions the plaintiffs are County Court Judges, Family Court Judges, and Surrogates who claim that the Unified Court Budget Act (L 1976, ch 966; L 1979, ch 55; L 1980, ch 881) denies them equal protection insofar as it provides higher salaries for Judges of co-ordinate jurisdiction in certain counties in the *463 New York City metropolitan area. The plaintiffs also seek a declaration that they are entitled to retroactive salary increments to compensate them for the discrepancies.
The Supreme Court consolidated the three actions and granted summary judgment for the plaintiffs, against all defendants except the State Comptroller and dismissed the action against him.
The Appellate Division reversed and granted judgment in favor of all the defendants, except the State declaring the statute constitutional. The complaint against the State was dismissed because the Appellate Division found "no persuasive authority * * * to demonstrate that it is a proper defendant in these actions". (88 AD2d 305, 308.)
The order of the Appellate Division should be modified by reinstating the complaints against the State and otherwise affirmed.
Claims against the State primarily seeking money damages should, of course, be brought in the Court of Claims (Schaffer v Evans, 57 N.Y.2d 992). It is settled, however, that a declaratory judgment action in the Supreme Court is an appropriate vehicle for challenging the constitutionality of a statute (Press v County of Monroe, 50 N.Y.2d 695). In addition, the State is a proper party to such an action because of its obvious interest in and right to be heard on matters concerning the constitutionality of its statutes (CPLR 1012; cf. Weissman v Evans, 56 N.Y.2d 458). Thus the motion to dismiss the complaint against the State for lack of jurisdiction should have been denied.
In all other respects the Appellate Division correctly held that the defendants are entitled to summary judgment for the reasons stated in its opinion. We would simply note that our recent opinion in Matter of Tolub v Evans (58 N.Y.2d 1) provides additional authority for the Appellate Division's conclusion that the plaintiffs have not been denied equal protection.
In the Tolub case we stated (at p 8) that a State budgetary act "will not be struck as violative of equal protection merely because it creates differences in geographic areas * * * As long as the State had a rational basis for making such a distinction, it will pass constitutional muster under *464 an equal protection challenge". In the case now before us the relevant classes encompass Judges of three separate courts established and maintained throughout the State. As the Appellate Division indicates, there are State-wide disparities in population, caseload, and cost of living, which provide a rational basis for the Legislature to adopt price differentials for those serving in different areas of the State. The case is clearly distinguishable from Weissman v Evans (supra) involving a limited class composed entirely of Judges of the District Court which exists only in two adjoining counties on Long Island, where differences of this nature were not evident and therefore could not serve to provide a rational justification for a salary differential between the Judges sitting in Nassau County and those sitting in Suffolk County.
In the Tolub case we also observed that when a rational basis exists for the classification enacted by the Legislature, "equal protection does not require that all classifications be made with mathematical precision" (Matter of Tolub v Evans, supra, at p 8). Thus in this case the fact that the general statutory scheme, when applied on a State-wide basis, may produce some inequities for certain Judges within a particular class does not render the statute unconstitutional.
Accordingly, the order of the Appellate Division should be modified, with costs, by reinstating the complaints against the State only for the technical purpose of declaring in favor of the State as well as the other defendants; and otherwise the order should be affirmed.
FUCHSBERG, J. (dissenting).
Special Term's holding that "[t]here is no rational basis for the classifications here under review" (109 Misc 2d 107, 113) is eminently correct.
Far from the Legislature having adopted "price differentials for those serving in different areas of the State" (at p 464), whether on the basis of population, caseload or cost of living, the criteria which occur to the majority, or, for that matter, to any other factors, be these qualifications, experience, length of service or any other acceptable justification for singling out certain members of the same court, these differences were totally disregarded. Rather, the only basis for the patent discrimination to which plaintiffs point *465 is the historical fact that in times gone by it was permissible for each of the 62 counties of the State, all discrete governmental units, to set whatever salary it thought best. And, lest there be any doubt on this score, although the respondent on this appeal, Chief Administrator of the Courts, now urges that we hold that the system adopted by the Legislature be found not to violate the plaintiffs' equal protection rights, his official report made a point of noting that the differences in compensation with which we deal in this case indeed are due solely to "the former system of court funding by local government" (Report of the Chief Administrator of the Courts to the Governor, the Legislature and the Chief Judge of the Court of Appeals [pursuant to L 1979, ch 55]). Such a ground, standing alone, will not support the disparate treatment here (Weissman v Evans, 56 N.Y.2d 458, 464).
This though the "long-heralded and legislatively indorsed substitution of State for local control of the courts" (56 NY2d, at p 466) ushered in by section 1 of article VI of our State Constitution took this power and obligation away from the counties and placed it in one authority, the State. For court unification, "unimpeded by artificial local boundaries", was to eliminate "the discordant results which were bound to flow from the discredited funding practice which permitted each county to go its own way" (Weissman v Evans, supra, at p 464).
Nevertheless, irrational disparities, which no nonhistorical theory can explain, continue to abound. For example, bearing in mind that a geographical distinction without rational basis will offend equal protection (Manes v Goldin, 400 F Supp 23, 29, affd 423 US 1068), while the State paid the Onondaga Surrogate $48,000 per annum for managing a caseload of 1,868 probate and accounting petitions in a county which ranked tenth in population, his counterpart in Richmond County, which ranked eleventh, received $10,000 more for managing a load of only 648 petitions. An even more topsy-turvy illustration, say from the County Court, is found in a comparison between the $53,928 paid to the Judge of that court in Broome County, where the load of 445 case filings was the largest in the State, with that of his fellow Judge in more rural Sullivan County *466 (where, though the filings numbered only 112, the County Judge received $58,422) or the salary of their Putnam County colleague (who, though concerned with but 39 filings, was the recipient of $61,792).
Equal protection does not, to be sure, demand absolute uniformity. So a broad classification may be divided into subclasses whose distinctions are not governed by mathematical nicety. By equal logic, a total failure to classify should not validate invidious discrimination within the resulting broad classification. It follows that to treat the salary levels of the County, Family and Surrogate's Court Judges as though they still are set by 62 separate counties rather than by the unitary State government upon which this responsibility has been imposed is to mock not only the equal protection principle in general, but, as applied to fair compensation, our pretensions of uniformity in particular.
Finally, as to Matter of Tolub v Evans (58 N.Y.2d 1), from which the majority seeks succor, it is enough to note that the salary differential which prevailed among the law assistants there was, as our court took the pains to note (58 N.Y.2d 1, 9-10), then in the process of being equalized during an ongoing transitional period which the Legislature had established to wipe out the inequality. Consequently, whatever the merits of the equal protection claim there, it is not to be equated with the present case, where the inequality has been completely ignored.
It follows that the order of the Appellate Division should be reversed and judgment entered declaring (1) the Unified Court Budget Act unconstitutional insofar as it denies equal protection of the laws to the plaintiffs, County Court Judges, Family Court Judges and Surrogates by whom this suit is brought and (2) that, accordingly, these Judges are entitled to retroactive salary increments.
Order modified, with costs to respondents, in accordance with the opinion herein and, as so modified, affirmed.