OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiffs, Jessica Arvelo (Arvelo), an infant, by her parent and natural guardian, David Arvelo, and David Arvelo, individually, moved by oral motion during the course of the nonjury trial of the action for permission to file a late notice of claim against the defendant, New York City Board of Education. Defendants, City of New York and the New York City Board of Education, oppose the motion on the ground that the Civil Court lacks jurisdiction to entertain the motion pursuant to General Municipal Law § 50-e (7).
STATEMENT OF FACTS
Plaintiff, Arvelo, commenced an action against the defendants for personal injuries sustained during gym class at I.S. 2 in November 1995. Plaintiff alleges that the defendants were negligent in the supervision, instruction and safety of the plaintiff during the class. It is uncontroverted that a notice of claim was served on the defendant, City of New York. The note of issue indicates that service of the summons and complaint was completed on April 17, 1996 and issue was joined on May 20, 1996. The action was transferred to this court on April 21, 1998 pursuant to CPLR 325 (d) by order of the Honorable John Leone. During the course of the presentation of plaintiff’s case, at trial it was determined that plaintiff had failed to file a notice of claim against the defendant, Board of Education, notwithstanding the allegation in paragraph “2” of the complaint that “on or about November 28, 1995 a notice of claim was served upon the comptroller in compliance with the requirements of the General Municipal Law and the Education Law.”
*103 ISSUES PRESENTED
I. Does the Civil Court have jurisdiction, to decide a motion to file a late notice of claim?
The court is presented with the initial issue of whether the Civil Court has jurisdiction to entertain a motion to serve a late notice of claim. The mainstream case law and defendants’ position hold that this question is reserved by statute exclusively for the province of the Supreme or County Courts. For the following reasons, the court disagrees and finds that it has jurisdiction to address plaintiffs motion on the ground that the exclusion of the Civil Court from the statute renders General Municipal Law § 50-e (7) unconstitutional.
The Civil Court of the City of New York obtains its jurisdiction from both New York Constitution, article VI, § 15 and the various statutes of the State as adopted by the New York State Legislature. The Civil Courts of the City of New York were constitutionally established in 1962, generally replacing the former City and Municipal Courts. While the Civil Court does not have initial jurisdiction to entertain actions involving sums of money in excess of $25,000, it may be endowed with jurisdiction to do so where the Supreme Court transfers an action pursuant to CPLR 325 (d), as was done in the instant case. CPLR 325 (d) provides that “a court in which an action is pending may, in its discretion, remove such action without consent to such lower court where it appears that the amount of damages sustained may be less than demanded, and the lower court would have had jurisdiction but for the amount of damages demanded.” Thus, there is no dispute that this court has jurisdiction to hear the merits of this action.
The controversy arises concerning the power of this court to decide plaintiffs motion to file the late notice of claim. Defendant relies on General Municipal Law § 50-e (7), added in 1976 (L 1976, ch 745, § 2), which provides that all applications regarding leave to serve a late notice “shall be made to the supreme court or to the county court.” While the statute on its face appears to prohibit an application for this relief to the Civil Court, an examination of the underlying logic of the statute and its legislative history reveals that the Civil Court is, in fact, an appropriate forum for this redress.
With minor exceptions, the constitutional and statutory civil jurisdiction of the Civil and County Courts, as lower courts, mirror each other. They are both courts of limited monetary jurisdiction ($25,000) and have certain express but limited pow *104 ers regarding such matters as mechanic’s liens, foreclosures, deed and contract rescissions and reform. County Courts, which operate in most counties of New York State, no longer exist in the five boroughs of New York City, having been constitutionally abolished and replaced by the unique structure of the Civil Court in 1962.
A strict reading of General Municipal Law § 50-e (7) would mandate the conclusion that litigants in New York City whose cases find their way to the Civil Court, either ah initia or by way of a CPLR 325 (d) transfer, must initiate a section 50-e (7) motion only in Supreme Court, while the remaining residents of the State have the possible option of the County or Supreme Courts, depending upon, among other things, their residency or where their case was initiated. In the first situation, a plaintiff who is seeking damages of less than $25,000 and commenced an action in the New York City Civil Court, having become familiar with, and subject to, its particular procedural and calendar requirements and rules, perhaps having engaged in extensive motion practice and, as in this case, began its trial, is required to leave the environs of the Civil Court and bring a motion in Supreme Court. The concomitant result is a further congestion of the Supreme Court’s calendar, at additional expense, including filing fees and yet another waiting period, for the sole purpose of obtaining permission to file a late notice of claim in order to continue the prosecution of the very case commenced in Civil Court. The second possibility would be those cases where the Supreme Court has, by its experience, determined that a certain action should be transferred to the lower court for all purposes (i.e., County or Civil Court) pursuant to CPLR 325 (d). A plaintiff sent to the Civil Court is still required to seek redress back in the Supreme Court (conceivably at any stage in the litigation) for permission to file a late notice of claim. Significantly, once an action is transferred to the Civil Court, pursuant to CPLR 325 (d), it remains in the Civil Court for all purposes, including pretrial and posttrial motions and posttrial judgment enforcement and execution proceedings. Additionally, once a case has been removed to the Civil Court from Supreme Court, its appellate route is to the Appellate Term, rather than the Appellate Division. Defendant would have us accept the irrational conclusion that the Legislature saw fit to endow the Civil Court with the wisdom and power to resolve all legal issues except for permission to file a late notice of claim.
Defendant, City, argues that it does not waive its right to assert this defense, which may be raised at any time in the *105 proceeding. The most onerous results attend to the litigant who has commenced its action in the Civil Court, availed itself of the procedures and adhered to the rules of the Civil Court, and yet is compelled to seek a remedy in the Supreme Court. This procedure creates a disparity among litigants, based solely on their place of residence in New York State, which the Legislature had no rational basis for instituting. Consequently, a plaintiff who has proceeded through an entire course of litigation, including discovery and pretrial motions in the Civil Court may, as a result of the strict application of General Municipal Law § 50-e (7), find its trial put on hold while the attorneys travel to Supreme Court for the first and only time, simply and exclusively for the purpose of a ruling on the motion. The illogical consequence is that, should plaintiffs motion be granted by the Supreme Court, the remainder of the litigation would continue in Civil Court, with the parties again becoming passengers on the Castleton Avenue bus and shuttle between Supreme and Civil Courts. Owing to the time involved in the process, it would be extremely likely that if a jury had been impaneled, it would have had to have been disbanded and a new trial started. This, of course, makes no sense and is a waste of precious and sorely needed judicial resources.
The court’s research on this question uncovered a paucity of cases. Those which speak favorably to the issue of late filing of a notice of claim primarily involve small claims actions in which the concept of “substantial justice” was the predicate for allowing a more flexible application of the statute, thereby deeming it permissible to grant the application for relief in the Small Claims Part of the Civil Court, contrary to the dictates of the statute (Schneider v Town of Orangetown, 171 Misc 2d 497 [Just Ct, Rockland County 1997]; Resnick v New York City Health & Hosps. Corp., 161 Misc 2d 156 [Civ Ct, Richmond County 1994]; Lurie v New York City Off. of Comptroller, 154 Misc 2d 950 [Civ Ct, NY County 1992]). While the court applauds the erudition and reasoning followed in this line of cases, and agrees with their holdings, it cannot accept the premise that a litigant, by choosing the Small Claims Part of the Civil Court, benefits from a more inclusive standard of justice than those who, by choice or necessity, find their case in the Civil Court. Justice cannot be a rubber band which expands and contracts depending upon the court which holds it.
The attending result of this disparity is that the Legislature, in adopting General Municipal Law § 50-e (7), has created a restriction on a class of persons, i.e., residents of the City of New *106 York, which results in a denial of equal protection of the laws for those persons, without any rational basis.
Professor McLaughlin, in analyzing the constitutionality of CPLR 325 (d), notes that: “some have argued that the section is unconstitutional, as a violation of the equal protection clause of the Fourteenth Amendment, for it would then discriminate between litigants without any rational basis” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C325:4, at 568). Professor McLaughlin also emphasizes other problems with the statute, noting that: “[a] second procedural quirk, fraught with constitutional overtones, is that when a case is transferred from the Supreme Court to the Civil Court, any appeal must go to the Appellate Term. From the Appellate Term it can get to the Appellate Division only by permission of the court” (ibid.). McLaughlin goes on to state that, had the action remained in the Supreme Court, the appeal would have gone directly to the Appellate Division, making the route to the Court of Appeals easier. “Compounding the constitutional problem,” he says, is that the Third and Fourth Departments have no Appellate Term; therefore, appeals from the inferior courts go through the Appellate Division (ibid.). While not offering a conclusive finding, Professor McLaughlin provocatively proffers that: “[t]his discrimination between citizens in different parts of the state is questionable.” (Ibid.) In concluding his commentary, he notes that: “there seems an inherent unfairness in requiring a plaintiff, who files his case in Supreme Court, to pay Supreme Court filing and jury fees, but, when the action is transferred to, say, the New York City Civil Court, the plaintiff is limited to recovering Civil Court costs and fees.” (Ibid.) While we address here a different statute, Professor McLaughlin, in questioning the constitutionality of the disparity of treatment among litigants, raises an issue equally applicable to the analysis of the General Municipal Law.
It would seem that the Legislature, by providing that a motion for permission for late filing of a notice of claim be made in either Supreme or County Court, intended that a lower court of limited jurisdiction would also have the jurisdiction to determine the issue, but inadvertently omitted the reference to the Civil Court. What other rational basis would there have been for the Legislature to have included the lower County Court and omitted the Civil Court, its fraternal jurisdictional twin? Had the Legislature limited the venue to Supreme Court, all citizens of the State, regardless of the situs of their action *107 or their residence, would have been required to travel the same path in the court system. However, the Legislature created certain judicial tributaries for some litigants to follow depending, in part, on their residence, but neglecting to provide New York Civil Court litigants with a similar logical avenue. The Legislature can, of course, do this, but it must have a rational basis. The court is unable to discern or postulate one.
An analysis of the legislative history of General Municipal Law § 50-e (7) is persuasively elucidating by its omission of any discussion concerning the rational basis for not including the Civil Court. Nowhere in the myriad documents submitted in support of or in opposition to the bill is there any relevant discussion regarding the Legislature’s intention with respect to the omission of the Civil Court. The salient purpose of the statute was cogently stated by the Legislature in its statement of the rationale of the bill noting that it was: “[t]o give a more equitable balance by breathing greater flexibility into section 50-e without defeating its basic purpose; codifying existing decisional law on troublesome questions, and overruling decisional law and repealing or amending existing statutes that do not reflect the basic purpose of notice of claim statutes or that have led to unjust results.” (Mem in Support, Bill Jacket, L 1976, ch 745.) In support of the bill, the Judicial Council also emphasized that the bill would achieve flexibility and fairness. In its introductory passage, it stated:
“The Judicial Council recommends that all provisions of law which now prescribe different formalities for notices of claims against municipal and district corporations be incorporated in a new section 50-e of the General Municipal Law adapted to modern and progressive concepts of the law of procedure.
“The general purpose of the proposed new section is to effect uniformity throughout the state as to requirements for notice of claims against municipal corporations.
“The requirement of notice is one of the safeguards devised by the law to protect municipalities against fraudulent and stale claims for injuries to person and property. It is designed to afford the municipality opportunity to make an early investigation of the claim while the facts surrounding the alleged claim are still ‘fresh’. On the other hand, ‘these provisions [notice statutes] were not intended as a trap for the unwary and the ignorant/
“An examination of the decisional law, however, indicates that far too often technicalities in this field have prevented the disposition of honest claims on their merits.” (Recommended *108 Improvements and Unification of Requirements of Notices of Claim Against Municipal Corps, Bill Jacket, L 1976, ch 745 [emphasis added].)
The Legislature’s omission of the Civil Court defies its own rationale and that espoused by the Judicial Council in that the omission results in a lack of uniformity, and strict technicalities which serve only to hamper justice rather than promote it.
Interestingly, and in further support of the possibility of legislative oversight, the introductory paragraph to Judiciary Law § 190 states that: “[t]he jurisdiction of each county court, except the county courts of counties within the city of New York, extends to the following actions and special proceedings” (emphasis added). This section was amended in 1984 (L 1984, ch 11) and 1988 (L 1988, ch 477), over 20 years after the County Courts were abolished by the New York Constitution. However, the incorrect reference to the County Courts of New York City was not deleted and still exists in the statute. Noteworthy is the fact that in 1969 (L 1969, ch 699) the Legislature added Judiciary Law § 182, in which they designated “[t]he number of judges of the county court in each county to be as follows.” Former subdivision (39) of that section designated Richmond County as having one County Court Judge even though the New York Constitution had seven years previously eliminated this position from Richmond County. Subsequently, the error was corrected. This is another example of legislative oversight or confusion resulting from the multiplicity of courts in this State. Clearly, the Legislature has before it a Herculean task in substituting or adding the Civil Court each time it must delete, modify or amend a statute involving the jurisdiction and powers of the former County Courts in New York City. There, in fact, exist numerous sections of the statutes that apparently give only the County Court the power to hear a particular matter, and an analysis of each particular statute makes it impossible to determine on its face whether there is, in fact, a rational basis for not granting the Civil Court similar powers.
In determining the constitutionality of a statute or government activity, absent invidious discrimination or denial of a fundamental right, the statute or activity must be found unconstitutional if there is no rational basis for a classification or the disparity in treatment of citizens similarly situated (Matter of Tolub v Evans, 58 NY2d 1 [1982]; Board of Educ. v New Paltz United Teachers, 44 NY2d 890 [1978]; Matter of Pascual v State Bd. of Law Examiners, 79 AD2d 1054 [3d Dept 1981], *109 lv denied 54 NY2d 601; Robert v Ford Motor Co., 73 AD2d 1025 [3d Dept 1980]; Matter of Parker v Kolb, 62 AD2d 128 [3d Dept 1978]). Accordingly, based on the foregoing reasons, the court finds that General Municipal Law § 50-e (7) is unconstitutional in that there is no rational basis for the disparity of treatment or the imposition of a greater burden of seeking redress in the Supreme Court for permission to file a late notice of claim on the litigants of Civil Court and, more particularly, residents of New York City. The court further finds no rational basis for the Legislature’s exclusion of the New York City Civil Court in the statutory scheme and creation of this disparate burden on New York City residents as compared to the residents of the other counties who have available the use of either the Supreme Court or County Court, the lower court having similar jurisdiction to that of the New York City Civil Court. Therefore, the court will entertain plaintiff’s motion to file a late notice of claim; for to refuse to do so would deprive plaintiff of the equal protection of the laws as guaranteed by the United States and the New York Constitutions (US Const 14th Amend; NY Const, art I, § 11).
II. May the court grant permission to file a late notice of claim?
The court is now presented with the question of whether plaintiff is entitled to file a late notice of claim against the defendant, Board of Education of the City of New York. General Municipal Law § 50-e (5) states that: “[u]pan application, the court, in its discretion, may extend the time to serve a notice of claim * * * In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney * * * acquired actual knowledge of the essential facts * * * The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant * * * whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits” (emphasis added). The court recognizes the line of cases which stringently applies the statutory rule precluding plaintiff from filing a late notice of claim (Pierson v City of New York, 56 NY2d 950 [1982]; Matter of Zbryski v City of New York, 147 AD2d 705 [2d Dept *110 1989]). However, for the foregoing reasons, and guided by the above statutory considerations, the court will grant plaintiffs motion and permit a late filing of notice of claim against the defendant, New York City Board of Education.
Plaintiff commenced this action against the defendants, City of New York and New York City Board of Education, in 1996 as a result of personal injuries sustained in 1995. General Municipal Law § 50-e (1) (a) requires that: “ [i] n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation * * * the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.” It is uncontroverted that a notice of claim was filed against the defendant, City of New York. Education Law, title V, article 77, § 3813 (2) provides that: “no action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section * * * unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.” This statute also sets forth the same criteria for consideration for the filing of a late notice of claim as the General Municipal Law.
Due to inadvertence, plaintiff failed to file a separate notice of claim against the defendant, New York City Board of Education. However, the City of New York and the Board of Education interposed a single answer, and defended the action by its Corporation Counsel. Of particular significance is the fact that the Office of Corporation Counsel represents both the City of New York and the New York City Board of Education, unlike other departments or agencies of the City, which are represented by different counsel. The practical consequence is that the Board of Education, through its counsel, had knowledge of the details and facts of this incident early in the litigation, once the notice of claim was filed against the defendant, City. There is no claim in this action that the defendant, Board of Education, did not have adequate notice of the facts to investigate the alleged incident and mount an informed and well-prepared defense, which, in fact, it did from the inception, and continued to do so through the presentation of plaintiffs case during the trial. Defendant, Board of Education, has not put forth any evidence to indicate that it would have defended this action any differently had the plaintiff completed the ministerial task and filed a notice of claim at the Board of Education’s offices.
*111 Moreover, there is no prejudice to the defendant as a result of any late filing, in view of the City’s actual notice of the incident and its details and the defense of the action. To deny this plaintiff her day in court would result in severe prejudice to the plaintiff, effectively dismissing her claim. While this may expose plaintiff’s counsel to a malpractice claim, this harsh result serves only to further penalize the plaintiff for a ministerial oversight which can otherwise be easily rectified at no cost to the defendant. Plaintiff would be left with the sole remedy of a malpractice action, in which she, by her guardian, in order to prevail, would have to successfully prove her claim against the City and the Board of Education. Thus, her attorney would become the insurer of the defendants while they escape liability for their judicially determined wrongful acts. Additionally, plaintiff would be required to endure further time and expense to institute a plenary action against her counsel, with no assurance of success, and possibly left with only the ravages of a long, arduous journey through the court system. Certainly, had Odysseus been required to deal with the court system rather than battle the Cyclops on his journey home, Penelope would have remarried, his dog would have died, and millions of students would have been spared having to read the Odyssey. Public policy demands that litigation be decided on the merits whenever possible and that tortfeasors bear the responsibility for their own wrongful acts. Technicalities should not be used to circumvent justice.
The court distinguishes this case from those in which no notice of claim at all was filed by the plaintiff. Here, the additional ministerial task of further serving the Board of Education, although designed to specifically put the Board of Education on notice of the action, was a mere superfluous act in light of the Board of Education’s knowledge of the action as a result of the notice of claim filed against the defendant, City of New York. Furthermore, the Board of Education does not conduct its own examination, under oath, of the claimant but utilizes the Corporation Counsel for that purpose under General Municipal Law § 50-h. This scenario is fraught with havoc and confusion for the litigant who is to be burdened with this harsh result for failure to perform a ministerial act which defies logic and common sense in the instant case. Adding to this confusion is the fact that if a litigant consults the Administrative Code of the City of New York, he will find that although it provides the specific requirements regarding actions against the City, there is no mention of the specific procedure for claims against the *112 Board of Education, except to state that the “comptroller may require any person presenting for settlement an account or claim * * * for any cause against the city or the board of education, to be sworn before the comptroller * * * to answer orally as to any facts relative to the justness of such account or claim * * * In adjusting and settling such claims, the comptroller, as far as practicable, shall be governed by the rules of law and principles of equity which prevail in courts of justice.” (Administrative Code, tit 7, ch 2, § 7-203 [actions against New York City — settlement of claims].) This is another example of the disjointed and piecemeal approach to the notice of claims process in the City of New York, which is overburdened with technicalities that create a maze from which the litigant cannot exit.
The court also notes that the New York State Trial Lawyers Association, a widely subscribed to and respected group, publishes as a service to its members a statement entitled “Time Limitations: Notice of Claims” which is a summary of the time and manner of service on municipal corporations. Interestingly, the list describes the notice of claim process for, inter alla, the City of New York, Transit Authority, Health and Hospitals Corporation, New York City Housing Authority and the New York City School Construction Authority. However, nowhere on the list is there a description for the notice of claim filing on the Board of Education, despite the fact that there is a separate statutory filing requirement under the Education Law. This is a curious omission for such an esteemed group, in view of the volume of tort actions that are filed each year against the City of New York involving the Board of Education.
Accordingly, following a consideration of all the relevant facts and circumstances as heretofore discussed, including the fact that there is no prejudice to the defendants, plaintiffs motion for a late filing is granted (Matter of Continental Ins. v City of Rye, 257 AD2d 573 [2d Dept 1999]; Matter of Peterson v City of New York, 73 Misc 2d 618 [Sup Ct, Queens County 1973]). Inasmuch as the trial of the action has already commenced, the trial will continue on June 14, 1999 at 9:30 a.m. at the courthouse, 927 Castleton Avenue, Staten Island, New York. The fairest, most equitable and commonsense solution is that the court will entertain an application by the defendants for an opportunity to conduct further discovery, if necessary, and upon good cause shown.